SAGINAW MILLING CO. v. SCHRAM.

1. TRIAL—APPEAL—JUSTICES OF THE PEACE—AMENDMENT.

It was within the discretion of the trial court to refuse to permit the defendant, in an action for breach of a contract to sell certain hay, to amend his pleadings on appeal from justice's court so as to cover the objection made by plaintiff that the notice of defense was insufficient and that if defendant relied upon any subsequent promises or representations of the plaintiff as a release from the contract it should have been pleaded.

2. PLEADING—RECOUPMENT—BREACH OF CONTRACT.

Defendant, having pleaded in justice's court that plaintiff failed to take certain hay which it had bought, and having claimed a recoupment, the pleadings, though sufficient as a defense for breach of the contract to take the hay, were insufficient to permit defendant to recover damages, and only entitled him to make proof that he

was prevented from delivering the hay by the acts of the plaintiff, but where the parties had stipulated that the declaration, plea and notice were sufficiently broad to admit proof of breach of the contract, the objection was not tenable as a ground for excluding evidence of a trade usage for the purchaser to furnish a baler and pay the expenses of baling the hay.

3. CUSTOMS AND USAGES—CONTRACTS—SALES—EVIDENCE.

Where a contract of sale of a quantity of hay stated the ordinary terms of sale and contained the phrase, "we pay for baling," being signed by both parties, testimony tending to show a usage or custom for the buyer to provide balers and pay the expense of baling the hay before delivery was admissible to explain the ambiguity.

4. SAME.

Evidence of usage is admissible in connection with such informal meagre contracts, void of details as to be uncertain or ambiguous, not to contradict the well expressed intent of the parties but to explain or clear up doubtful provisions or even to supplement omitted or tacitly implied conditions incident to the expressed terms.

5. SAME—PLEADING—RECOUPMENT.

A general custom need not as a general rule be pleaded but as the basis of an affirmative defense in recoupment it should be specially pleaded under Circuit Court Rule 7 in order to permit a recovery for the breach of a contract of sale made with reference to such custom.

Error to Sanilac; Beach, J. Submitted January 5, 1915. (Docket No. 12.) Decided April 19, 1915.

Assumpsit in justice's court by the Saginaw Milling Company against John Schram for breach of a contract of sale. Judgment for defendant for an alleged recoupment. Plaintiff appealed to the circuit court which directed a verdict in its favor. Defendant brings error. Reversed.

*C. F. Gates,* for appellant.

*H. O. Babcock* and *E. L. Beach,* for appellee.

STEERE, J. This case was begun in a justice's court of Sanilac county, where judgment was rendered in favor of defendant under his claim of recoupment for $225.86, from which plaintiff appealed to the circuit court of said county where, on retrial by jury, a judgment was rendered in its favor on a directed verdict for $105.85, and defendant in turn has now removed the case to this court by writ of error with many assignments, which all condense to the question of whether the trial court erroneously excluded a line of testimony on which defendant relied, and without which he could not prevail. If the court rightfully excluded such testimony, the directed verdict for plaintiff was right.

The action was brought on the following contract, the italicized words being in writing and the remainder in print:

"Saginaw Milling Company agrees to buy and receive from *John Schram* of *Sandusky*, and said *John Schram* agrees to sell and deliver in *cars or shed* at *Sandusky* before *Dec. 15, about 80* tons baled hay at the following prices: *Per ton $9.75 loose. We pay for baling.* No damaged hay to be accepted. Advance payment of *one hundred* dollars *($100.00)* on the above is hereby acknowledged.

"Dated *Oct. 22, 1912.*

[Signed] *"Saginaw Milling Co.,* Buyer,
"By *Timothy Simmons.*
"Seller: *John Schram.*"

On joining issue in justice's court both parties pleaded orally. Plaintiff declared on all the common counts in assumpsit and especially for $100 cash paid defendant on the contract, with interest and for damages sustained by reason of his nonfulfillment of the contract, making a total of $300. Defendant pleaded the general issue and gave notice of a claim by way of recoupment for damages he had suffered owing to plaintiff's refusal to take the hay contracted for, obliging him to market his hay elsewhere at a

reduced price, the market having fallen before plaintiff refused; and, on plaintiff's demand for a bill of particulars of such claim of recoupment, stated items, for loss on decline of market, commission on resale, work and labor, storage, cost of baling hay and interest, totaling $761.25.

When the case came on for trial in the circuit court the following stipulation was filed:

"It is hereby stipulated and agreed by and between the parties to the above entitled case, by their respective attorneys, that upon the trial of said case in the justice court that the following agreement was made: 'It is agreed by and between the parties hereto that the declaration, plea, and notice of the respective parties to this suit are sufficient, broad, and specific enough to admit of the proof of any damages that can be shown by either party for any and all breaches of the contract sued under.' And it is agreed that the same stand in this court as though returned by the justice."

Upon the trial plaintiff made proof of the contract, the payment to defendant of $100 upon it and that the hay was never delivered to plaintiff nor offered for delivery after being pressed, and thereupon rested.

On defendant's part it was claimed that the written memorandum of agreement was incomplete in certain particulars, requiring, for a correct understanding of its meaning, that it be read and construed in the light of attending circumstances, well established and known customs of buying and marketing hay, and what was said between the contracting parties as to matters essential to performance of the contract, not mentioned nor specifically provided for; his defense and affirmative claim for damages under the plea of recoupment, to establish which he sought to introduce evidence, being, so far as important here, in outline, that by well-established custom prevailing in that market, well known to both contract-

ing parties and regularly followed by plaintiff, hay purchased "loose" by dealers from farmers to be delivered baled was pressed at the expense of the purchasers by pressers selected or approved by them; that this contract was made with this custom in view, talked over and understood between the parties at the time of the purchase, and that Simmons, plaintiff's agent who made the purchase for it and signed the contract, in discussing the matter said to defendant, "We have our press, the Wedge boys do our pressing; all you have to do is to deliver the hay after it is pressed, and board the men while pressing hay;" that all the hay purchased by plaintiff in that locality was purchased under the same form of contract, with blanks for which its agents were supplied, and that it was pressed at plaintiff's expense by whom and as it dictated; the reason and importance of the custom being that different sized bales were made for different markets, and it was in plaintiff's interest for it to have authority to direct the size of bales, time and style of pressing, weighing, price, etc.; that defendant could not dictate the time of pressing and was not obligated to deliver it unless baled, nor after December 15, 1912; that he was anxious to deliver the hay within the time specified, being at all times ready and willing to do so, but was prevented by the fact that plaintiff did not send a press and men to bale it, though Simmons had promised at different times both before and after December 15th to do so; that on January 6, 1913, defendant again interrogated Simmons in regard to the matter and was then informed for the first time that plaintiff would not receive the hay, instructions having been received from headquarters to receive no more; that the price of hay had then fallen, and on the next day plaintiff served a written notice on plaintiff that if it did not comply with the

contract at once he could sell the hay elsewhere at best price obtainable and require it to make up the loss he sustained by reason of its breach of the contract.

Proofs offered by defendant to sustain this line of defense were objected to on the ground that the contract was complete, not uncertain nor ambiguous in any respect; that oral evidence could not be admitted to change or vary a written contract; that defendant could not prove a custom nor show that a written contract was changed after its execution without proper notice under his plea of general issue. This view was adopted by the trial court, most of the offered testimony being excluded during the interrogation of witnesses and the claimed effect of that which was admitted was nullified by a directed verdict for plaintiff.

The written agreement provides for delivery of "baled hay" in sheds or cars at Sandusky, bought at $9.75 per ton "loose." "We pay for baling." It is silent as to how, when or where or at what price the baling is to be done, or who is to be employed to do it. Grammatically "we" could neither refer to plaintiff or defendant, both parties signing being in the singular, nor could it reasonably be interpreted as meaning that the price of baling should be equally divided.

Amongst other questions asked of defendant and answers not permitted are the following:

"Was there anything said at that time (when the contract was entered into) as to who was to pay for the baling of the hay and how it was to be done?

"Do you know anything about the custom under these memoranda as to who does the baling?

"Were there any arrangements made as to whether they were to be large or small bales?

"Now, were there any arrangements made at that time as to when the baling was to be done?

"Was there any statement made at that time as to what press if any the plaintiff would furnish?

"Were there any arrangements or agreements made as to who was meant by 'we,' when it says, 'We pay the baling?'

"*Counsel:* Do I understand the court shuts out anything that was said touching that phrase, 'We pay for the baling?'

"*The Court:* Yes; I think so."

Defendant having testified to seeing Simmons at different times after the contract was made, was not allowed to answer any questions touching conversations between them relative to subsequent promises and agreement claimed to have been made. Of this line of inquiry defendant's counsel said to the court, when arguing the objections:

"We wish to show that at that time the plaintiff company agreed that they would send their press there and that Mr. Schram informed them that he was ready for it at different times, that he expected they would send it there, and that Mr. Schram went to see them at different times, from that time to the 6th of January."

Simmons, called under the statute by defendant, having testified that he made various other contracts of like nature using the blank forms, was asked, amongst others, the following questions, objections to which were sustained:

"Who did the pressing of the hay you bought under those contracts?

"Did you at that time have a presser engaged to press the hay you purchased under these memoranda taken from that book as you filled them out?

"Was it not the custom in this county, not only with the plaintiff company, but with all the other buyers of hay, to have a press to press the size bales they wanted for the market?

"Did you state to defendant, at the time of making the contract, that you had a gasoline press, and if he sold the hay to them he would have to buy no fuel as you furnished your own gasoline?"

Other witnesses, including hay dealers of experience in that locality and elsewhere, were called and interrogated as to the general custom and usages of trade in buying and selling hay, but not allowed to answer.

In charging the jury the court stated that there might be some uncertainty as to who was to pay for this baling, but it was the opinion of the court "we" meant plaintiff; but that defendant was precluded from making his proposed proofs and claimed defense because "the issue made by the pleadings is simply a straight issue, denying that the defendant refused or neglected to deliver the hay. If the defendant intended to claim here, or had a right to claim in the face of the explicit terms of this contract, that he was prevented from delivering it by representations or promises made by plaintiff after the contract was made, that should have been set up in the pleadings."

Defendant's counsel then interposed and moved that the case be then opened and the pleadings amended to cover the suggestion of the court, claiming the point had not been raised in objections of plaintiff to questions and offers of proof. It was held that this motion was too late. This ruling was clearly within the discretion of the court.

We are impressed that, as applied to defendant's affirmative plea in recoupment, where he virtually became a plaintiff seeking to recover damages for breach of contract, there is force in the contention that his pleadings are lame; but considered as a negative plea in defense of plaintiff's action for damages against him, his oral pleadings in justice's court as outlined, when construed with the stipulation quoted, entitled him in his defense to much of the testimony offered to negative the claim of plaintiff by showing that it, and not he, was in default.

To that end we think it was competent for defendant to show, if able, not in contradiction but in explanation, the manner in which the parties themselves construed the indefinite "we" as inserted in a separate sentence of the contract, and any subsequent promises of plaintiff to the same effect; and also to show a custom of the trade known to both and in relation to which they contracted, if such general custom existed. Evidence of usage is permissible in connection with such informal and meager contracts void of details, not to vary or contradict the well-expressed intention of the parties so far as clearly expressed in writing, but to explain doubtful provisions of the contract, and even to supplement omitted but tacitly implied incidents to those actually expressed. *Ledyard* v. *Hibbard,* 48 Mich. 421 (12 N. W. 637, 42 Am. Rep. 474) ; 12 Cyc. p. 1082.

A general custom need not as a rule be pleaded. *Fish* v. *Manufacturing Co.,* 120 Mich. 500 (79 N. W. 793) ; *Miller* v. *Insurance Co.,* 1 Abb. N. C. (N. Y.) 470; but as an affirmative defense, for the purpose of recoupment, it undoubtedly should be specially pleaded, not only under the general rules of pleading, but especially under Circuit Court Rule 7. While the trial court rightly held that under the pleadings defendant could not maintain his plea of recoupment, and the testimony excluded was not admissible for that purpose, we think much of it was admissible in defense, against plaintiff's claim, under the plea making general denial of liability and charging that plaintiff released defendant by first breaching the contract.

Although the trial court did not abuse its discretion in ruling that the motion to amend came too late at the stage of the trial then in progress (*Hermann & Co.* v. *Department Store,* 160 Mich. 224 [125 N. W. 49]), inasmuch as a retrial must be granted, the

court may, and we think should, in view of the stipulation as to the pleadings, grant a timely made motion to amend defendant's plea.

The judgment is reversed, and a new trial granted.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.