## EUGENE McDONALD AND A. S. McDONALD, COPARTNERS DOING BUSINESS AS A. S. McDONALD COMMISSION COMPANY v. UNION HAY COMPANY.[1]

### June 13, 1919.

### No. 21,149.

**Sale — oral modification of memorandum — custom of the trade.**

By written memorandum defendant, a dealer in feed at Minneapolis, sold and agreed to ship 300 tons of bran at $28 per ton to plaintiffs, delivery at Boston or Boston rate points. The bran was not shipped as requested or within a reasonable time. Plaintiffs alleged an oral modification of the contract, whereby the shipment should be made during the last 12 days of April, 1917. Sixty tons were shippped when the modification was made. No further shipments were made, although plaintiffs demanded performance several times during the month of May. A custom in the feed trade requires 24 hours' written notice before either

[1]Reported in 172 N. W. 891.

seller or buyer may be held to have breached the contract. Such notice was not given. In this action for damages it is *held*:

(1)   It was competent to prove the alleged oral modification, though the contract was written and within the statute of frauds.

(2)   The custom of the trade entered into the terms of the contract, and under a denial of a breach of the contract, evidence of this custom under which breach was disproved was admissible.

(3)   There was nothing irreconcilable between the terms of the oral modification alleged and the operation of the custom proven. And further, plaintiffs' insistence upon performance of the contract after the time specified in the modification waived the time and clearly put in operation the custom referred to.

Action in the district court for Hennepin county to recover $2,112.50 for breach of contract. The answer alleged that the shipment of bran to plaintiff by defendant was prevented by an embargo on all shipments moving to Boston and Boston rate points, and defendant could not procure from the railroad companies cars in which to ship the bran to such points, and plaintiff failed to furnish defendant with other shipping instructions thereon; that by reason of the inability of defendant to obtain cars, plaintiffs instructed defendant to turn over the bran in such cars as would not be allowed to run east to the E. S. Woodworth Company of Minneapolis, but that company refused to accept 240 tons which defendant tendered to it. The case was tried before Waite, J., who denied defendant's motions for a directed verdict, and a jury which returned a verdict for $2,215.32. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*David R. Thomas* and *Frank J. Morley,* for appellant.

*Kerr, Fowler, Schmitt & Furber,* for respondents.

HOLT, J.

Plaintiffs and defendant are dealers and brokers in feed; plaintiffs in Boston and defendant in Minneapolis. In the fall of 1916, defendant sold 300 tons of bran for $28 per ton, delivered at Boston or Boston rate points, for November shipment. By subsequent agreement the price was changed to $32 per ton. At the request of plaintiffs in December, 1916, shipment was delayed. However, in January, 1917, and the months fol-

lowing they repeatedly asked that the bran be delivered speedily, but without avail. On April 18, 1917, it is claimed a modification of the sale contract was agreed upon, to the effect that the bran should all be shipped before the expiration of that month. No bran was shipped except 60 tons turned over when the modification was made. This action was brought to recover damages for the breach. Defendant counterclaimed, on the theory that the breach was not on its part, but on plaintiffs'. The trial resulted in a verdict for plaintiffs. Defendant appeals from the order denying its motion in the alternative for judgment or a new trial.

We do not sustain the contention that no valid modification of the written sales contract, on April 18, 1917, was proven by competent evidence. The oral part of the agreement of that date did not alter the terms of the contract, it merely fixed the time within which the merchandise that should have been delivered long before might be delivered under the contract. It went to the performance of a subsisting contract of recognized validity. Scheerschmidt v. Smith, 74 Minn. 224, 77 N. W. 34. Moreover, this was not an oral modification of a contract necessarily void unless in writing. True, it was a contract for the sale of goods of the value of more than $50; but, if part of the goods were delivered and accepted, the contract need not be in writing. Sixty tons of the bran were delivered and accepted under this modification and as part thereof. And there is no trouble with the consideration, for defendant was then in default—more than a reasonable time for dealing had elapsed—and a waiver of this breach was a consideration for defendant's promise to make shipment during April.

There are, however, other difficulties with plaintiffs' case that, in our view, preclude recovery. One of the plaintiffs, the active manager of the business, admitted that there is a custom or usage, prevailing both in Minneapolis and at Boston and Boston shipping points, that a contract of the sort here involved is not breached until after 24 hours' written notice has been served upon the one party by the other within which he must tender for delivery or accept, as the case may be, the merchandise involved in the contract. There was other testimony as to this usage. The evidence as to custom was objected to because not pleaded. It was rightly admitted. Where a general custom or usage prevails in the con-

duct of a trade or business, it enters into and becomes a part of a contract made in that business, unless there is repugnancy between the custom and the terms of the contract in which case the latter control. Paine v. Smith, 33 Minn. 495, 24 N. W. 305; Globe Milling Co. v. Minneapolis Elev. Co. 44 Minn. 153, 46 N. W. 306. Plaintiffs averred a breach of an alleged contract to deliver during the time therein specified. If the custom of this trade annexed to the contract this condition that no default in delivery could arise until after 24 hours' written notice, served on the seller, that the merchandise would be procured in the open market and the seller held for the loss, it would seem that, under a general denial of the breach alleged in the complaint, the defendant might prove the custom which is but one of the terms or conditions of the contract bearing upon the breach alleged. Breen v. Moran, 51 Minn. 525, 53 N. W. 755, holds that a custom, though local, need not ordinarily be pleaded, Steidtmann v. Joseph Lay Co. 234 Ill. 84, 84 N. E. 640; Saginaw Milling Co. v. Schram, 186 Mich. 52, 152 N. W. 945. As the pleadings stood, the evidence of the usage or custom mentioned was admissible. No written notice to put defendant in default as required by this custom was given.

Plaintiffs, however, seek to avoid the effect of the want of notice in this instance, by the claim that it is not applicable to a case where a definite time for delivery is fixed by the contract. We do not think the claim should be sustained. In the terms of the modification, as testified to by the plaintiff who claimed to have made it, there is nothing excluding the operation of the trade custom referred to. The delvery was ont for a day certain, but covered a period of 12 days. In Lillard v. Kentucky Distilleries & Warehouse Co. 134 Fed. 168, 67 C. C. A. 74, Judge Lurton says: "In reference to contracts where custom is ordinarily comprehended as part of the agreement the rule, as we understand it to be, is that evidence of such custom and usage is not to be excluded, unless the language employed by the parties is found to be plainly irreconcilable with the rule imposed by the custom." We think the language in which the modification of this contract was expressed is reconcilable with the custom of the trade upon the subject of placing either party in default. Holder v. Swift (Tex. Civ. App.) 147 S. W. 690; S. B. & B. W. Fleisher, Inc. v. Abbott, 222 Fed. 211, 137 C. C. A. 525. Furthermore,

plaintiffs' conduct indicates that they construed the contract as subsisting in May and open to performance by defendant. If it was, then surely the custom came into play. That brings us to a consideration of waiver of the alleged modification that all the bran should be shipped in April.

Defendant contends that, irrespective of the effect of the custom mentioned, plaintiffs, by demanding delivery after the expiration of the time fixed therefor, waived the right to insist that the breach occurred as of April 30, and that by such conduct defendant was given a reasonable time from the date of the last demand within which to make delivery. Language of text writers and decisions may lend support to the contention of appellant that, where a time limit is fixed for the performance of a contract, a request made, upon the party in default, to perform, after the expiration of the time, waives the breach, and the contract thereafter becomes a subsisting contract with the time limit eliminated, giving the one in default a reasonable time after the request within which to perform. 3 Elliott, Contracts, § 2026; Lowy v. Rosengrant, 196 Ala. 337, 71 South. 439. It may be doubted whether the rule applies where the one in default makes no effort whatever, after the request is made, to perform nor promises so to do. But in this case we have more. On April 30 plaintiffs wrote defendant, knowing that the letter could not be received until after the time limit had expired: "Now, please bend some real efforts to clean up this matter." On May 7 defendant replied: "The writer will keep after this and try to get same straightened out at once." On the same day, and again on May 11, plaintiffs write urging defendant to ship the bran. The next letter from plaintiffs is dated May 17, wherein it is said no reason exists for turning this bran "over to E. S. Woodworth and thereby penalize us for $1.25 per ton for handling charges * * * we want you to get busy and clean up this contract without further delay." Before this last letter had barely time to reach defendant, plaintiffs, on May 19, wrote declaring that they would sue for damages for a breach of the contract. It appears that during the whole time in question embargoes were placed on the cars belonging to certain railroads, and it was difficult to obtain cars for shipment to eastern points. Some arrangement was made between plaintiffs and defendant, whereby delivery might be made to E. S. Woodworth at Minneapolis who would forward, if defendant could not obtain cars that would go east. On May

22 there was evidently an offer to deliver to Woodworth, but on account of market conditions he refused to accept in behalf of plaintiffs, and they also refused when appealed to by telegram to direct Woodworth to receive shipments of the bran. We think these continued requests in the month of May for performance, coupled with defendant's promise and effort to perform, slight though it be, made the custom and usage above referred to for fixing liability for a breach of the contract clearly applicable. It is said the waiver was induced by defendant's fraud and misrepresentations as to conditions existing at Minneapolis and therefore should not avail. If the excuses given by defendant were false, plaintiffs' correspondence indicates a discovery of the deception prior to the demand of May 17. We think neither party, upon this record, put the other in default under the admitted custom and usage of the trade, hence there can be no recovery of damages. In view of that conclusion the other assignments of error need no discussion.

Order reversed.