CENTRAL WAREHOUSE LUMBER COMPANY v. REDLINGER
& HANSEN COMPANY.[1]

December 7, 1934.

No. 30,126.

[1]Reported in 257 N. W. 656.

*Arthur H. Lindeman* and *James C. Melville,* for appellant.
*Briggs, Weyl & Briggs,* for respondent.

STONE, JUSTICE.

Action to recover the agreed price of lumber. Defendant appeals from the judgment entered after a verdict had been directed against it for the full amount of plaintiff's claim.

Plaintiff is a wholesale lumber dealer and defendant a building contractor. August 10, 1931, defendant purchased from plaintiff four carloads of lumber to be delivered f. o. b. Poplar, Montana, where defendant was then erecting a schoolhouse. The lumber was to be shipped from mills on the West Coast. Plaintiff's order and defendant's invoices, corresponding thereto, specified for the most part "No. 1 common fir." The purchase price as to amount is not disputed. The issue arises on an offset pleaded by defendant, consisting of alleged damages due to a breach of implied warranty of quality, the amount of the claimed damages being $1,241.47.

· Defendant has argued the case here as though its alleged offset were based upon misrepresentations made by plaintiff concerning the lumber. That issue was not even suggested by the answer; was not litigated voluntarily or otherwise at the trial; and so is not open to defendant now.

■ In support of the set-off, the answer avers that when the lumber was purchased plaintiff knew that it was for use in the school at Poplar; was familiar with the specifications for that job; and that the lumber was not suitable for use thereon. The only warranty thus relied on is one, implied, that the lumber would be suitable "for the intended purpose." But plaintiff was under no

duty to see to it that defendant ordered, either as to grade or dimensions, the stuff called for by its contract with the school authorities at Poplar. Defendant elected what to buy and what not to buy. And no liability can result against plaintiff if the lumber ordered was not in all respects such as was required for the job in hand. See 2 Mason Minn. St. 1927, § 8390 (uniform sales act, § 15).

■ The evidence compels the conclusion that the parties contracted with reference to certain trade customs, well known to both of them. Certain "rules" of the West Coast Lumbermen's Association were excluded, but the determinative usages of the trade were gone into at length. Witnesses for both parties agree, in effect, that, in the case of a buyer's claim of defective quality, "the contract, by custom and trade usage provision, required the seller to call upon the buyer to agree to and abide by an official reinspection through the manufacturer's association existing in the district from which the lumber originated, and if the buyer be unwilling to agree to and abide by such official reinspection for the seller to then consider the buyer's complaint, if any, to have been withdrawn." Quoting further from the brief for the appellant: "The buyer must furnish an intelligent report as to the item or items which he is rejecting and the cause for his rejections within a few days or a week at the outside, from the receipt of the lumber." The verdict was directed against defendant because of its noncompliance with the provision so made part of the contract by applicable and controlling custom. Hence we may put aside 2 Mason Minn. St. 1927, § 8423 (uniform sales act, § 49), which imposes upon a buyer the duty "to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach" in order to preserve his remedy.

A verdict against defendant was imperative. All the lumber had been delivered at Poplar before September 1, 1931. On that date plaintiff was given some notice by telephone of a complaint concerning the contents of the last car delivered. By telegram it notified defendant at Poplar that it could "only consider claim on such

portion of each shipment as is proven below grade by official reinspection of West Coast Lumbermen's Association." That telegram was followed by a letter to the Minneapolis office of defendant, going more into detail. From then until September 19, 1931, plaintiff appears to have made repeated efforts to get from defendant intelligible information as to the basis of its complaint that some of the lumber was below quality, insisting, however, that an official reinspection was necessary to entitle defendant's claim to consideration. All of these efforts on plaintiff's part were futile. On October 3, 1931, plaintiff again wrote defendant, pointing out that the latter had not as yet "furnished us with a written and detailed report showing the exact quantity of each item in each of the four cars which you are rejecting."

Not until November 23, 1931, did defendant furnish plaintiff with any details concerning the defective lumber. The amount of the damage was then claimed to be $764.94 and freight charges.

The foregoing is enough to show that defendant utterly ignored the requirement that there be an "intelligent report" of the items rejected and an official reinspection to settle the amount and kind of defective lumber. (If there had been such an official reinspection the cost of it would have been borne by the party in error.) That requirement by the usage of the lumber trade, known to both parties at the time the contract was made, was as much a part of the contract as though it had been incorporated therein. 6 R. C. L. 856; 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 2515; McDonald v. Union Hay Co. 143 Minn. 40, 172 N. W. 891. Without compliance with it defendant had no counterclaim or offset for damages for breach of the contract arising from the delivery of lumber below the grade or different in quality from that called for by the contract.

There is some claim for defendant that plaintiff waived its demand for reinspection. The record fails to indicate that any such claim was made to the trial court. But it appears that as soon as plaintiff was notified that defendant was objecting to some of the lumber it demanded detailed information as to the ground of the complaint, and also that there be an official reinspection. That position it maintained to the end.

The judgment is affirmed.