BALLINGER AND COMPANY, INC., PLAINTIFF, *v.* GRIME, D. B. A. LASKEY LUMBER COMPANY, DEFENDANT.

Municipal Court, Toledo.

No. 99134. Decided April 20, 1961.

*Mr. Merritt W. Green, II,* for plaintiff.
*Mr. Harry Mee,* for defendant.

KIROFF, J. The plaintiff and defendant herein entered into an oral contract for the purchase of a quantity of lumber and on January 12, 1959, the following confirmation was sent by the plaintiff to the defendant as to the type of lumber that was ordered:

"6/4 x 12"—R/L No. 3 Com. KD Ponderosa Pine S4S and uniformly resawn to approximately 11/16 x 12 S1S2E."

The lumber in question was delivered to the defendant's place of business and upon delivery the defendant complained immediately that the lumber in question was defective and unusable.

The evidence indicated that the defendant had purchased lumber from the plaintiff previously and that in a previous transaction, when the quality of a shipment of lumber was in question, the reinspection procedure of the Lumber Association in question was followed.

It appeared from the evidence that the buying and selling of lumber is an extremely technical transaction because of the question of the grade of lumber involved. To facilitate the transactions in the lumber industry, producers of various types of lumber have organized into associations to provide uniform grades of lumber for both buyers and sellers, with standards by which each can determine whether he is buying or selling for full value.

As evidence in this particular case as plaintiff's Exhibit No. 24, are the Standard Grading Rules, published by The Western Pine Association, an association of lumber producers which produces the type of lumber which is the subject of this action. An examination of the exhibit indicates the complexity of lumber grading.

In this case, the confirmation of the order sent by the plaintiff to the defendant stated that the order was subject to the shipping and reinspection provisions of the association governing the species of the lumber on the order. (See Plaintiff's Exhibit No. 2.)

The producer of the lumber in question was the Ellingson Lumber Company of Klanath Falls, Oregon, a member of the Western Pine Association.

When the defendant complained to the plaintiff that the lumber in question was unusable, the plaintiff arranged for an inspection of the lumber by an inspector of the Western Pine Association and on June 4, 1959, an inspector made a reinspection of the lumber, on the defendant's premises. The report of the inspector is in evidence by stipulation in the deposition of James Nelson, the inspector.

In order to understand the contention of the parties in this particular case, it is necessary to understand just what the defendant ordered. The order was for "6/4 x 12"—R/L No. 3 Comm. KD Ponderosa Pine S4S and uniformly resawn to approximately 11/16 x 12 S1S2E."

In lumber terminology this would mean six quarter-inch by twelve-inch number three common Ponderosa Pine, surfaced four sides and then uniformly resawn to eleven-sixteenths inches kiln dried. In other words, a board of six-quarter inches is resawn to produce two boards of like width and length but one-half as thick.

As pointed out by the plaintiff in his brief, in grading lumber the better face of a board is used to determine grade. Since, according to the rules of the Western Pine Association, the best face of board graded No. 3 Common can be of no better quality than the No. 3 Grade, the opposite side of this same board may be no better than a No. 3 Grade but might be of an inferior grade, either a No. 4 or a No. 5 Grade.

When a piece of stock 6/4 x 12" wide and surfaced on four sides is uniformly resawn to produce two boards of like width and length but one-half as thick, one can only be certain that the resulting 11/16" board, which retains the best face of the 6/4 stock will be of Grade No. 3. The opposite board, having the opposite face, will not be of a grade better than a No. 3 Common but may be of a Grade No. 4, or even a Grade No. 5.

The key to the type of lumber ordered by the defendant is that, by the order and confirmation it was lumber graded at 6/4 x 12" and then resawn after grading and was not lumber 11/16" thick by 12" and graded as such.

It is apparent that under the type of order placed by the defendant, up to 50% of the order could be less than Grade No. 3 and this is the basis of the rule of the Western Pine Association, which reads as follows:

"When lumber is sold on a specific grade and then resawed or ripped and the product shipped, the product shall be considered of the grade ordered, if 50% or more of it is up to the grade invoiced." (See Plaintiff's Exhibit No. 24.)

The inspector from the Western Pine Association, in his report, in evidence by stipulation, stated that under the rules

of the Western Pine Association, the lumber in question was up to grade.

The contentions of the defendant are that the lumber was not up to grading; that the moisture content was not properly graded by the inspector and that the lumber was not fit for the use for which it was sold, as required by Section 1315.16, Revised Code.

With respect to the first two contentions of the defendant, it might be well to discuss custom and usage. At the time of the trial of this case, the defendant objected strenuously to the admission into evidence of Plaintiff's Exhibit No. 24, the Standard Grading Rules of ten lumber associations, including the one applicable to the lumber in this case. Without delving into the citations, sufficeth to say that the legal principle that custom and usage may be proved by heresay evidence is as old as the rule allowing the proof of custom and usage itself.

What then is the effect of custom and usage in this particular case? As stated in 55 Am. Jur., Section 5, at page 267, Usages and Customs:

"... Briefly, a custom or usage to affect the rights of parties to a contract must be an ancient one, or at least one that has existed for such length of time as to become generally known; it must be one certain, continuous, and uniform in its operation, and so general and universal in character that knowledge essential to the binding effect upon the party to be charged may be presumed, and it must be one that has been peaceably acquiesced in by those whose rights naturally are to be affected by it. It must also be reasonable and not opposed to or in conflict with established rules of law, whether defined by statute or by the common law, and not inconsistent with good morals or public policy or with the terms of the contract itself."

The customs in the lumber industry, as they pertain to this case, meet the above requirements. The plaintiff and the defendant have been in the lumber business for a goodly number of years. They know it well. The defendant had previously used the reinspection procedure of a lumber association. Certainly, the defendant knew of the custom. Once the custom was established, it is as much a part of the contract as though it had been specifically written therein.

As stated in 55 Am. Jur., Section 27, at page 287, Usages and Customs:

". . . When the essential elements or conditions of the existence of a valid usage or custom are shown, such usage or custom is to be given effect as one of the terms of the contract and as binding on the parties as though it were written. . . ."

Further, a case in point on this matter is *Central Warehouse Lumber Company* v. *Redlinger & Hansen Co.*, 257 N. W., 656, decided by the Supreme Court of Minnesota in 1934. The court, in discussing the rules of the West Coast Lumbermen's Association as to customs and usages in the trade, stated at page 657 of the opinion as follows:

". . . That requirement by the usage of the lumber trade, known to both parties at the time the contract was made, was as much a part of the contract as though it had been incorporated therein. 6 R. C. L., 856; Dunnell, Minn. Dig. (2 Ed.), 2515; *McDonald, etc., Co.* v. *Union Hay Co.*, 143 Minn., 40, 172 N. W., 891. . . ."

Moreover, in the case at bar, the confirmation of the order in question specifically stated that the order was subject to the reinspection procedure of the association governing the species of the lumber on order (see Plaintiff's Exhibit No. 2).

It is the opinion of this court that the defendant was contractually bound by the custom and usage of the trade, as set forth in the Standard Grading Rules of the Western Pine Association.

Applying these rules to the lumber in question, the court specifically finds the lumber received by the defendant was of the grade ordered. The testimony of the inspector, in evidence by deposition, was not impeached by the defendant. The court further finds that the reinspection was in accordance with the rules of the Western Pine Association with regard to the moisture content of the lumber.

This brings the court to the final contention of the defendant that the lumber was not fit for the use that it was purchased for, as required by Section 1315.16, Revised Code, the portion of the statute applicable being as follows:

"Subject to Sections 1315.01 to 1315.76, inclusive, Revised Code, and any law applicable thereto, there is no implied war-

ranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(A) When the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he is the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(B) When the goods are bought by description from a seller who deals in goods of that description, whether he is the grower or manufacturer or not, there is an implied warranty that the goods shall be of merchantable quality."

There is no question in the court's mind that the lumber was of merchantable quality, since the lumber received by the defendant was what he ordered, the question being whether there was an implied warranty that the lumber was fit for the particular use for which it was intended.

This point was well briefed by the plaintiff and the law in Ohio seems clear. In discussing what is now Section 1315.16, Revised Code, the Circuit Court of Appeals, Second District, in the case of *Dunbar Bros.* v. *Consolidated Iron & Steel Mfg. Co.*, 23 Fed. 2d, 416, stated at page 420 as follows:

"By Section 15 of the Sales Act (G. S. Conn., 4681, subd. 1; Section 8395, General Code), where the buyer expressly or by implication makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill and judgment, there is an implied warranty that the goods shall be reasonably fit for such purposes, and by subdivision 2 there is a warranty of merchantable quality, and subdivision 3 provides that, if the buyer has examined the goods, there is no implied warranty as regards defects which such examination would have revealed. Here the seller was not, by reason of his skill and judgment, in a better position than the buyer to determine whether or not the springs in question would be fit for the particular use for which they were intended by the plaintiff, and it was not justified and did not rely upon such skill and judgment in making its purchase. There is no such finding below. Indeed, the findings disclosed that the seller and buyer are on equal footing in regard to the ability

to assert the suitability of the springs for the plaintiff's particular purpose. Williston on Sales (2d Ed.), 234, p. 456; *Wasserstrom* v. *Cohen*, 165 App. Div., 171, 150 N. Y. S., 638.''

The Circuit Court of Appeals, Sixth Circuit, in the case of *Kansas City Bolt & Nut Company* v. *Rodd*, 220 Fed., 750, at page 754, stated as follows:

''The general rule has this qualification, among others, that when a known, described, and definite article is ordered of a manufacturer, although it be stated by the purchaser to be required for a particular purpose, yet if the known, described, and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer. *Seitz* v. *Brewers' Refrigerating Co.*, 141 U. S., 510, 518, 12 Sup. Ct., 46, 35 L. Ed., 837. The learned District Judge evidently regarded the instant case as falling directly within the qualification mentioned, and as applied in the case last cited. We think this a mistaken view, and that the case is governed by the general rule rather than by the qualification stated. As we understand the rule, the existence or nonexistence of an implied warranty of fitness for a particular use depends upon whether or not the buyer is presumed to have relied upon his own judgment or on the skill or judgment of the seller. See *Kellogg Bridge Co.* v. *Hamilton, supra*; also *Pullman Car Co.* v. *Metropolitan Ry. Co.*, 157 U. S., 108, 15 Sup. Ct., 503, 39 L. Ed., 632, where the general rule and the exception stated are referred to.

''The Ohio Uniform Sales Act (Section 8395[1], General Code), provides that:

'' 'When the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose.'

''And subdivision 4 provides:

'' '(4) In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose.'

''We understand that these provisions substantially enact

the common-law rule, unless possibly (which we do not decide) subdivision 1 substitutes a question of fact for the presumption that the buyer relied on the seller's skill or judgment. . . .''

In the case of *Central Warehouse Lumber Company* v. *Redlinger, supra,* this very question was raised under Mason's Minnesota Statutes, 1927, Section 8390 (Uniform Sales Act, Section 15), now 1957 Minnesota Statutes, Section 512.15, the provisions of which compare exactly to Section 1315.16, Revised Code.

The first syllabus of the case reads as follows:

''1. SALES

''Warranty that lumber would be fit for intended purposes HELD not implied, where buyer selected grades and dimensions, notwithstanding seller was familiar with specifications constituting part of contract under which buyer was erecting building in which lumber was to be used (Mason's Minn. St., 1927, Sec. 8390).''

And at page 656 of the opinion, the court stated:

''(1) In support of the set-off, the answer avers that, when the lumber was purchased, plaintiff knew that it was for use in the school at Poplar; was familiar with the specifications for that job; and that the lumber was not suitable for use thereon. The only warranty thus relied on is one, implied, that the lumber would be suitable 'for the intended purpose.' But plaintiff was under no duty to see to it that defendant ordered, either as to grade or dimensions, the stuff called for by its contract with the school authorities at Poplar. Defendant elected what to buy and what not to buy. And no liability can result against plaintiff, if the lumber ordered was not in all respects such as was required for the job in hand. See Mason's Minn. St., 1927, Sec. 8390 (Uniform Sales Act, 15).''

See also 75 Ohio St., 153; 4 Ohio Opinions 2d, 77; 9 Ohio Opinions 2d, 501; 32 Ohio App., 121; 38 Ohio App., 65.

In the instant case, this court finds that the defendant did not rely on the superior skill and judgment of the plaintiff in the purchase of the lumber in question and therefore finds that no implied warranty arose that the lumber would be fit for a particular purpose.

The court examined the lumber in question at the start of

this case. It was apparent that some of the lumber was badly cupped but the evidence clearly indicated to this court that the lumber was of the grade ordered, according to the standards of the industry.

The lumber ordered by the defendant was comparatively a cheap grade, purchased at a corresponding price. The defendant could have ordered a higher grade of lumber. This court holds that the defendant is bound to pay for what he received, since it is exactly what he ordered.

It is, therefore, ordered, adjudged and decreed that plaintiff have and recover judgment against the defendant in the sum of $1,583.66 and for the costs in this action.