. MORRIS E. MOORE v. JOHN G. ALLEN and Another.[1]

November 19, 1909.

Nos. 16,370—(141).

**Option for Sale of Real Property.**
The contract involved in this action considered, and it is *held* that it was

[1]Reported in 123 N. W. 292.

an option for the sale of real estate, not an executory contract of purchase; and that it expired by limitation five years from the date of its execution.

**Same — No Extension of Time.**

It appears conclusively from the findings of the court that the contract was not extended beyond the five-year period, by waiver, part performance, or otherwise.

Action in the district court for Hennepin county to determine adverse claims to four vacant lots in block 4 of Island Park addition to Minneapolis. In their answer defendants alleged that John G. Allen, as assignee of the contract mentioned in the opinion, claimed title and an interest in the lots described in the complaint; that said contract was in full force, had never been canceled and was a lien upon said lots; that said contract had been fulfilled by said Allen and the parties thereto, but the lots described in the complaint had never been conveyed pursuant to the contract; that plaintiff and his assignors had actual notice of said contract and of its assignments and set up that Allen and his assignor had paid taxes upon said lots and a part of the purchase price. The case was tried before Holt, J., who made findings of fact and as conclusion of law found that the contract was a valid and subsisting contract and that defendants were entitled to judgment for the specific performance thereof. From the judgment entered pursuant to the findings, plaintiff appealed. Reversed.

*John A. Larimore* and *Charles J. Tryon,* for appellant.

*Jay W. Crane,* for respondents.

*Harlan P. Roberts* filed a brief by consent.

LEWIS, J.

In May, 1901, William H. Anderson, being the owner of certain real estate in the city of Minneapolis, entered into a written contract with Wm. S. Beard and Henry B. Beard, containing the following provisions:

"Witnesseth, that said first party agrees to release and convey by quitclaim deed, without covenants, to second parties, or to any person designated by them, or either of them, within three (3) years from and after the date hereof, with the right to said second parties to

demand an extension of said term of two years' additional time, if they should require and so elect and demand, which additional time, if required and demanded, said first party agrees to extend and grant, and thereby make said term five years from and after the date hereof, for five hundred dollars for each and every lot, all his interest in and to the following described lands, real estate, and lots situated in said county of Hennepin and state of Minnesota," to wit: Certain lots in blocks 2, 4, and 5, Island Park addition, $500 each; certain lots, $400 each; and certain lots, $200 each. The second parties agreed to assume and to pay, as the same became due and payable, all taxes and assessments assessed or levied upon the premises for the year 1901, and all subsequent years during the life of the contract, and interest at the rate of five per cent. per annum from the date of the contract to the date of any conveyance which might be executed by the first party under the terms of the contract.

The following is the provision with respect to building houses: "And it is agreed by said first party that said second parties shall have the right to build a house on each of the following described lots, to wit: Lots 4, 5, 6, 9, 10, 11, 12, 13, 14, 23, 24, 25, 26, 30, and 31, in block 3; and said second parties agree to build not less than five such houses, and to commence to build the same within thirty days from the date of this contract, one each on as many of said several lots, each of which five houses so built, and all houses built on any of said lots, shall cost not less than $1,500 at prices for labor and materials at fair and reasonable values; and said second parties agree to have at least said five houses completed on or before four months from and after the date of this contract, ready and suitable for occupancy, in good order, and fully constructed in every particular, and they further agree to keep all costs of labor and materials fully paid as the work thereon, or materials furnished therefor, or on any such houses, progresses, and to keep and maintain such work so that every of said lots and property affected thereby shall be free from judgment, attachment, and liens of any kind or sort whatsoever."

There was a further provision that, whenever a house and lot were. sold by. the second parties, then the first party agreed to receive. a second mortgage thereon of $200 to secure the remaining purchase price; the second mortgage, however, to mature within two years from the date thereof. The first party also agreed to receive, in payment, a first mortgage upon any lot, to be executed by any purchaser thereof when the same should be sold by said second parties. It was agreed by the second parties that if they should fail or neglect, for. any cause, to commence construction of the houses agreed to be commenced, or should fail to complete the construction thereof within the time, or neglect or fail to pay the taxes and assessments, or to maintain and keep all the property free from judgments, attachments, and liens, as provided in the contract, then the first party, or his attorney, should have the right, at his election, after twenty days' notice in writing to that effect, to cancel and terminate the contract, and all rights of the second party thereunder, time being of the essence of the contract. "And it is further expressly understood and agreed that said second parties have no estate, right, title, or interest in or to said lands, or any of them, in this contract described, beyond the right to build and construct houses on certain of said lots, and to handle and control the sale of all said property to third parties at prices and upon making payments as herein provided; but all and every of said lots are to remain the property of said first party until conveyance and release is furnished in accordance herewith."

The Beards also agreed to keep all cost. of labor and material fully paid for the construction of any house which they built, and to keep the same free from judgments, attachments, and liens, and the contract also provided for an arbitration to settle controversies or disputes arising between the parties.

On the eighth of June, 1901, the Beards assigned the contract to Harold P. Goodnow, who, on the seventeenth of May, 1906, assigned the same to respondent John G. Allen. During 1901 and 1902, after June 8, Goodnow expended $15,000 in grading and filling up the lots described in the contract and in constructing sidewalks. Goodnow paid the taxes for the years 1901, 1902, and 1903; but the taxes for the years 1904 to 1908, inclusive, were paid by appellant and his immediate grantor, who claims title through conveyances

from William H. Anderson. While Goodnow was the owner of the contract, he erected five houses upon certain of the lots designated in the contract for such buildings, and expended in building the houses not less than $20,000, and received conveyances thereof. Appellant claims title by divers conveyances through intervening purchasers from Anderson to all the lots not conveyed pursuant to sales by Goodnow, and brought this action to determine adverse claim of title.

The court found, in addition to the facts above stated, that no notice was ever given to terminate the contract, and that respondent Allen tendered performance of the contract at the trial, which appellant refused to accept, and that at the time of the commencement of the action the lots were vacant, and that appellant and all those under whom he claimed had actual notice and knowledge of the Anderson-Beard contract and of the assignment from the Beards to Goodnow, and from Goodnow to respondents. As conclusions of law, the court found that respondents were entitled to judgment for the specific performance of the contract. Judgment was entered, from which plaintiff appealed, and the only question before the court is whether the findings of fact sustain the conclusions of law.

The case turns upon the construction to be given the original contract between Anderson and the Beards; it being conceded that the plaintiff had knowledge of the subsequent assignments through which respondents claim. If that contract is an option for the sale of real estate, and it was not merged into an actual contract of purchase by the conduct of the parties, it expired by limitation on the thirty-first day of May, 1904; or, if the time was extended two years, as provided in the contract, then it expired on the thirty-first day of May, 1906. If the writing is an executory contract for the sale of the entire number of lots described, then it was performed, in part at least, and, no action having been taken to cancel it under chapter 223, p. 431, Laws 1897, and chapter 294, p. 470, Laws 1901, it remained in force as between the parties to this action. But if the contract amounts to no more than the granting of the privilege to the second parties to purchase as many as they might elect of the various lots described at the prices therein named, then performance by the second parties with respect to a few of the lots did not affect its terms as to the balance. Although the

language of the contract is that the first party agrees to release and convey by quitclaim deed the lots described upon certain terms, this alone does not constitute a contract of sale and purchase. In order to determine the legal effect of this instrument, it is necessary to consider the obligation which each of the parties undertook to perform.

The first party agreed to convey those lots for which the second party would make payment within the life of the contract; but there was no obligation on the part of the second parties to purchase all of the sixty-four lots. They did agree to build not less than five houses, one upon each of the five lots designated, to cost not less than $1,500 each, to commence the same within thirty days from the execution of the contract and have the same completed within four months therefrom. They also agreed that such lots should be free from judgments and liens. It is manifest, from the terms of the contract, that the second parties were not proposing to purchase the property for their own use. The object was to secure control for the period of five years, if necessary, in order that they might sell it. The agreement to build the houses, pay taxes, and prevent the accumulation of assessments and liens was a part of the consideration which they agreed to give for the privilege of disposing of the property during the life of the contract. The expenditure of $20,000 for the building of houses does not affect the question. The second parties were only obligated to expend $1,500 each in the construction of five houses, and the expenditure of a larger amount was presumably for the purpose of making the balance of the property more attractive for sale. They were not required to do any grading, nor to construct any sidewalks, and, if they did so of their own will, it was apparently for the purpose of increasing the attractiveness of the property in order to enhance the sale. The payment of taxes, the provision for arbitration, and all of the other provisions agreed to be performed by the said second parties, constituted a part of the consideration which they agreed to give for the privilege of having the property under their exclusive control for sale for the period of five years. The first party bound himself to sell all of the lots upon certain terms; but it was discretionary with the second parties whether they would comply with those terms.

If the agreement amounted to an executory contract as to five lots, it was performed in that respect. But there was no obligation to purchase any other than those five lots. No title or interest in the other lots passed. The contract was in personam, the mere granting of a privilege, which the second parties and their assignees were not bound to perform as to the lots involved in this action. The contract was divisible, not an entirety, and expired by virtue of its own terms, and no notice to terminate was required. Womack v. Coleman, 92 Minn. 328, 100 N. W. 9. Let it be understood that it is not intended to hold that all unilateral contracts are options, or that option contracts in form may not be treated by the parties as contracts of purchase and sale, or become executory contracts of sale by part performance.

The contract provided that it might be extended by the first party, upon demand, for the additional period of two years. Goodnow held the contract from June 8, 1901, to May 17, 1906. The findings state that the improvements were made by Goodnow before the expiration of the three-year period, May 31, 1904; but it appears that two lots were sold and conveyed under the contract on the tenth of September, 1904, and that lot 26, in block 3, was conveyed to the purchaser December 6, 1906; but it was also stated in the same connection in the finding that lot 26 was sold under contract by the Beards in the year 1901, but was not conveyed to the purchaser until December 6, 1906, and was excepted from the assignments from the Beards to Goodnow and from Goodnow to respondents. The conveyance, therefore, of this lot was simply in pursuance of a contract of sale made during the life of the contract. The performance of an act which by the terms of the contract the first party was required to do was not an admission by him or his grantors that the contract had been extended or was in existence beyond the five-year period. There is no specific finding that the contract was renewed for the two years; but, a renewal having been provided for upon the demand of the second parties, it will be inferred that the extension had been granted.

Reversed.

JAGGARD, J.

I dissent.