CHARLES BALLARD v. JOSEPH FRIEDMAN AND OTHERS.[1]

April 7, 1922.

No. 22,679.

**Vendor and purchaser—statutory notice to vendee unnecessary when contract is only an option.**

1. The vendee's rights under a contract of purchase and sale can only be extinguished for his default in making payment of the purchase price by giving the notice required by section 8081, G. S. 1913, but such notice is not required where the contract is merely an option to purchase.

**Contract of sale not converted into an option of purchase.**

2. A provision in a contract that, if the vendor's title is not good and cannot be made good within a specified time, the contract shall

[1] Reported in 187 N. W. 518.

become void and the initial payment refunded, does not convert it into a mere option to purchase. Joslyn v. Schwend, 85 Minn. 130, explained.

**Contract construed as one of sale.**

3. The contract described in the opinion was one of purchase and sale, and, for want of the statutory notice to terminate it, the vendee's rights still subsist.

Action in the district court for Ramsey county to rescind a land contract and to recover $5,000 paid upon it. From an order, Brill, J., sustaining defendants' demurrer to the complaint, plaintiff appealed. Reversed.

*Elliott, Doll & Wiprud,* for appellant.

*Kerr & Richardson,* for respondents.

LEES, C.

Appeal from an order sustaining a demurrer to the complaint on the ground that it failed to state a cause of action. As alleged, these were the material facts: On November 15, 1918, Joseph Friedman and his wife entered into a written contract with the plaintiff and one Granstrom for the sale to them of the Park Theatre in the city of St. Paul. By the terms of the contract, the vendors agreed to sell and the vendees agreed to buy the property for $65,000, $10,000 to be paid as earnest money when the contract was executed, $30,-000 on or before 11 a. m. on March 1, 1919, and $25,000 by assuming a mortgage on the property of that amount. The vendors agreed to execute and deliver a warranty deed of the real property and a bill of sale of the personal property included in the contract when the $30,000 payment was made. They were to retain possession of the theatre and continue to operate it until the deed and bill of sale were delivered. If the vendees made the payment, the vendors were to account to them for the net income of the business, furnishing weekly statements of the receipts and disbursements. If the account showed a loss, the vendees were to make it good. Upon the consummation of the sale, the vendees were to assume Friedman's contracts with film companies for pictures to be displayed in the theatre and certain other contracts he had made, and they were to pay

the taxes payable after January 1, 1919. The vendors were to furnish an abstract of title to the property on or before December 5, 1918, and any objections to the title were to be made in writing on or before December 31, 1918, If the title was found to be unmarketable, the vendors were to have 30 days from December 31 to make it good. If it was not good and could not be made good within the time limited, the contract was to become void and the earnest money was to be refunded. If the title was good, or, if not good was nevertheless made good within the time limited, and the vendees refused to accept it, they were to forfeit the earnest money, but such forfeiture was not to affect the right of either party to enforce specific performance. Time was made the essence of the contract and there was an express provision that, if the vendors failed to make the stipulated payment of $30,000 before 11 a. m. on March 1, their rights under the contract should cease.

Plaintiff paid $5,000 in cash and Granstrom gave Friedman his check for $5,000 in payment of the earnest money. Granstrom's check was never paid, but was given under a secret agreement with Friedman that it should be returned. On March 1, 1919, which fell on a Saturday, plaintiff notified Friedman that he would not have the money to make the $30,000 payment until the following Monday. Friedman responded that, unless the payment was made before 11 o'clock, he would not accept it. The payment was not made and later Friedman made a long term lease of the theatre to other parties, who are now in possession. No notice of the cancelation of the contract has ever been given. Granstrom refused to join plaintiff in bringing this action and was, therefore, made a defendant. Plaintiff alleged that he elected to rescind the contract and demanded judgment for the return of the $5,000 he paid Friedman, with interest from the day of payment. The demurrer was sustained on the theory that the contract was merely an option for the purchase of the property, and hence the notice required by section 8081, G. S. 1913, was not necessary to terminate it.

If the contract was one of purchase and sale, plaintiff's rights thereunder could only be extinguished by giving the statutory notice. Needles v. Keys, 149 Minn. 477, 184 N. W. 33; Chapman v. Propp,

125 Minn..447, 147 N. W. 442; Mathwig v. Ostrand, 132 Minn. 346, 157 N. W. 589. Respondents rely entirely on Joslyn v. Schwend, 85 Minn. 130, 88 N. W. 410, 744. We have examined the records and briefs in that case in order to better understand the scope of the decision.

It appears that the vendor had good title when the contract was made. The day after, one Wilcox brought an action to enforce specific performance of a contract for the purchase of the property and filed a notice of lis pendens. While this action was pending, defendant tendered plaintiff a deed and demanded payment of the balance of the purchase price. Plaintiff refused to accept the deed on the ground that the filing of the lis pendens rendered the title unmarketable. Defendant then offered to return the earnest money. Plaintiff refused to receive it, notifying defendant that he was ready and willing to accept the deed and pay the purchase price as soon as the lis pendens was removed. More than 60 days after the contract was made, the lis pendens was discharged. Plaintiff then offered to pay the balance of the purchase price and demanded the deed. Defendant refused to deliver it and plaintiff sued for specific performance. The court made findings and ordered judgment for plaintiff. On appeal, this court held that the filing of the lis pendens made defendant's title unmarketable, that she failed to make her title good within 60 days (the time limited in the contract), and hence the contract became void and all the defendant could be required to do was to refund the earnest money. This was decisive of the case, but the court added that the defendant was not required to give notice of cancelation to terminate the contract since the statute has reference only to contracts of actual purchase and not to those which in their nature are mere options depending upon some contingency—in this case, the condition of the title. It is this remark which has given rise to doubts respecting the scope of the decision. The contract was designated in the opinion as an option contract, but there was an option only in the event of a failure of title. Since there was no failure of title, the general statement, insofar as it might apply to cases where the title is good, was obiter and is disapproved.

Referring, in Nostdal v. Morehart, 132 Minn. 351, 157 N. W. 584, to the title clause in a contract similar to that in Joslyn v. Schwend, it was said:

"Such a provision has no reference to a situation where the vendor can make title but fails to do so. It covers only the case where title is not good and in good faith cannot be made good. Joslyn v. Schwend, 85 Minn. 130, 88 N. W. 410, 744."

This is not such a case. It does not appear that the vendors did not have a good title or that the contract was not executed because the title was defective. Plaintiff wanted a deed and the Friedmans would have executed it if the March first payment had been made before 11 o'clock. They claim plaintiff's money on the ground that he forfeited it by failing to make his second payment at the stipulated hour. Their position is indefensible unless the contract is to be construed as only an option to purchase. But for the doubts raised by the Joslyn case the contract could not be so construed under the definitions of option contracts in Womack v. Coleman, 92 Minn. 328-333, 100 N. W. 9, and Morrison v. Johnson, 148 Minn. 343, 181 N. W. 945, and such doubts are dissipated by Nostdal v. Morehart. The contract now before us must be construed as one of purchase and sale. Among the reasons for so construing it are the legal effect of the clause obligating the vendors to operate the theatre for the vendees' benefit and account for the proceeds of the business, Chapman v. Propp, supra; the initial payment of $10,000, a sum out of all proportion to the value of a mere privilege or option to purchase the property within $3\frac{1}{2}$ months; and the reluctance of courts to place a construction on a contract which will enable a vendor to exact a forfeiture from a vendee for a failure to make a payment at the very hour stipulated. Needles v. Keys, supra. Forfeitures are regarded with increasing disfavor, and properly so, for the award of reasonable damages, rather than the infliction of a penalty for the breach of a contract, is all that substantial justice requires. See Prof. Ballantine's discussion of Forfeiture for Breach of Contract, Minn. Law Rev. 329.

Holding as we do that the contract was one of purchase and sale and that the rights of the vendees could only be extinguished for

a default in the payment of the purchase price by the giving of the statutory notice of cancelation, the conclusion follows that the complaint states a cause of action.

The order sustaining the demurrer is reversed.