## V. R. ROONEY v. DAYTON-HUDSON CORPORATION AND OTHERS.

246 N. W. 2d 170.

September 10, 1976—No. 45574.

*Geimer, Rice & Arnold, John D. Rice,* and *Charles R. Carmichael,* for appellant.

*Faegre & Benson, Gordon G. Busdicker, Gordon B. Conn, Jr., Briggs & Morgan,* and *David Spencer,* for respondents.

Heard before Todd, Yetka, and Breunig, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

This is an action for specific performance or, in the alternative, damages arising out of an agreement relating to the sale of the downtown Dayton's department store building in Rochester. The district court, upon the motion of defendants, granted summary judgment against plaintiff, and he takes this appeal from the judgment. We affirm.

The agreement upon which this action rests is embodied in a number of documents relating to the Dayton property, including a warranty deed, an assignment of lease, and a bill of sale. All of these documents were deposited August 21, 1973, with defendant Chicago Title Insurance Company, as escrow agent, along with a letter of instruction to Chicago Title. The latter document is the more important in construing the whole agreement and therefore must be set forth in some detail.

After reciting the deposit of the above documents and two checks, one in the amount of $10,000 and the other $20,000, the letter instructed the escrow agent as follows:

"3. On or before October 31, 1973, V. R. Rooney shall deposit with you the additional sum of $540,000, which together with the $10,000 presently held in escrow equals the purchase price ($550,000) of the real estate, all improvements and the leasehold interest represented by the deed and Assignment of Lease. Upon receipt of such additional sum of money,

"a) you may turn over to V. R. Rooney the deed and the Assignment of Lease (after inserting in the space for the effective date of the assignment the then present date) together with his check in the amount of $20,000.

"b) issue upon proper recording, the title insurance policies represented by commitments #26427 and #26426 covering this transaction. (By executing this agreement, all the parties hereto acknowledge receipt of a copy of each commitment and agree that title as shown thereon, after proper recording of required instruments, is acceptable.)

"c) forward to Dayton-Hudson Corporation and Eighth Street Development Company, in care of Robert Nys, Suite 1304, 777 Nicollet Mall, Minneapolis, Minnesota 55402, a copy of the deed and Assignment of Lease, together with the full purchase price of $550,000, and a statement of costs for the issuance of the title policies described in b) above, together with a copy of each such policy.

"d) to collect if necessary any taxes paid by Dayton-Hudson Corporation or Eighth Street Development Company as provided herein.

"e) Thereupon this escrow shall terminate.

"4. In the event V. R. Rooney does not make the additional deposit of money as required hereunder, you are to forward to Dayton-Hudson Corporation and Eighth Street Development Company, in care of Mr. Robert Nys, the deed, Assignment of Lease, the $10,000 in cash and the check in the amount of $20,000, altogether with a statement of your fees as escrow agent. Thereupon this escrow shall terminate."

Following those instructions, the letter contained the following agreement:

"Agreement between the parties hereto:

"1.   In the event this escrow terminates pursuant to the provisions of Section 3 above,

"a)   V. R. Rooney shall be responsible for the payment of all taxes, general and special, and all special assessments against the premises payable on or after June 30, 1973. Should it be necessary for either Dayton-Hudson Corporation or Eighth Street Development Company to pay any such taxes during the period of this escrow agreement, they shall promptly submit receipts therefor to you and the amount so paid shall be added to the $550,000 purchase price and collected by you from V. R. Rooney simultaneously with the transfer of the Deed and Assignment of Rents.

"b)   Dayton-Hudson Corporation and Eighth Street Development Company have prior hereto delivered to V. R. Rooney title commitments #26426 and #26427 which have been reviewed and are acceptable to V. R. Rooney.

"c)   Dayton-Hudson Corporation and Eighth Street Development Company hereby agree to pay a real estate commission to A. D. Strong Co., Inc. in the amount of $31,500.00.

"d)   V. R. Rooney has examined the premises and improvements located thereon and agrees to accept them in their present condition.

"2.   In the event this escrow terminates pursuant to the provisions of Section 4 above,

"a)   there shall be no real estate commission paid to A. D. Strong Co., Inc.

"b)   *V. R. Rooney shall have no right of redemption or any other claim or right against the premises or against Dayton-Hudson Corporation and Eighth Street Development Company.*

"c)   *Dayton-Hudson Corporation and Eighth Street Development Company shall cash the V. R. Rooney check and shall retain the $20,000 therefrom together with the $10,000 in cash as*

*liquidated damages, and shall have no further remedies pursuant to any agreement between the parties nor under law or equity.*

"3. This letter of instruction and escrow hereby cancels and supersedes any and all other agreements and understandings between the parties hereto, including but not limited to the agreement dated June 29, 1973, between Dayton-Hudson Corporation and Eighth Street Development Company, as Seller, and V. R. Rooney, as Buyer, covering the subject premises.

"4. Seller hereto agrees to indemnify and hold Chicago Title Insurance Company harmless from any and all actions taken by it in accordance with the instructions herein contained.

"5. If the premises are destroyed by fire or other casualty prior to October 31, 1973, buyer shall have the option by 10 days notice of terminating this agreement and all amounts deposited hereunder by buyer shall be refunded to buyer within 10 days. Buyer will insure the improvements on said premises during the escrow period for their full insurable value and shall provide to Seller a Certificate of Insurance which shall provide that said Certificate shall not be canceled except upon 10 days notice to seller." (Italics supplied.)

The letter was signed by defendant sellers, the real estate broker, and plaintiff.

The A. D. Strong Company through one Charles Towle acted as defendant sellers' real estate agent in securing plaintiff as buyer. While Towle apparently did not have a listing or agency, agreement, he was authorized verbally to secure a buyer for which he would be paid a commission upon a sale of the property.

Prior to the above agreement, the parties had entered into a purchase agreement dated June 29, 1973, which provided that plaintiff would purchase the Dayton property for $550,000, with $10,000 deposited as earnest money. Closing was set for July 26, 1973. In the event of plaintiff's nonperformance, the sellers were to retain the earnest money as liquidated damages or proceed with other available remedies including specific performance. Plaintiff was unable to arrange financing by the closing date;

however, it does not appear the sellers retained the earnest money or pursued other remedies. Rather, the earnest money of $10,000 became the $10,000 deposit under the agreement in question. Thereafter, the parties continued negotiations respecting the sale of the Dayton property culminating in the August 21 agreement.

Plaintiff again was unable to arrange financing acceptable to him and did not deposit the $540,000 with the escrow agent by October 31, 1973, as called for in the agreement. On that date plaintiff telephoned the sellers' representative, Jerry Amundson, and requested an extension of time within which to perform. That request was refused. Accordingly, on November 1, 1973, Chicago Title delivered to the sellers the conveyancing documents and the $20,000 check drawn by plaintiff on his account. The $10,000 check had been cashed when received and its proceeds were also delivered. On January 14, 1974, the property was sold to a third party.

Plaintiff contends that the sellers, through their conduct and representations *subsequent* to October 31, extended the time for his performance until January 15, 1974. They deny this. The trial court in granting summary judgment ruled that any extension not in writing was barred by the statute of frauds and that the agreement as modified was unenforceable.

The dispositive issues raised by plaintiff involve (1) the applicability of the notice of cancellation provision in Minn. St. 559.21,[1] and (2) the application of the statute of frauds, Minn. St. 513.05.

---

[1] Minn. St. 559.21 provides in part: "When default is made in the conditions of any contract for the conveyance of real estate or any interest therein, whereby the vendor has a right to terminate the same, he may do so by serving upon the purchaser * * * a notice specifying the conditions in which default has been made, and stating that such contract will terminate 30 days after the service of such notice unless prior thereto the purchaser shall comply with such conditions * * *. Such notice must be given notwithstanding any provisions in the contract to the contrary * * *."

■ Plaintiff argues that the agreement between the parties is a contract for the conveyance of land and as such can be terminated only by the 30-day notice prescribed in Minn. St. 559.21. Defendants concede that notice was not given but take the position that Minn. St. 559.21 is inapplicable to the parties' agreement for the reason that it is merely an option to purchase and not a contract of conveyance. Wurdemann v. Hjelm, 257 Minn. 450, 102 N. W. 2d 811, certiorari denied, 364 U. S. 894, 81 S. Ct. 222, 5 L. ed. 2d 187 (1960); Joslyn v. Schwend, 85 Minn. 130, 88 N. W. 410 (1901).

The nature of the agreement—whether it is a contract of sale or merely an option to purchase—turns on the obligations imposed on the parties.[2] In Wurdemann we succinctly set forth the difference (257 Minn. 461, 102 N. W. 2d 818):

"A contract of sale * * * must be bilateral in its obligation and if the contract binds one party to sell and the other party to purchase the property for a stipulated price then it is a contract of sale and purchase, the minds of the parties having met on the proposition and both having assented thereto; but if it gives to the second party the mere privilege of buying the property if he chooses, it is an option."[3]

---

[2] The general rule is that "the construction of a writing which is unambiguous is for the court, particularly when the intention of the parties is to be gained wholly from the writing." Leslie v. Minneapolis Teachers Retirement Fund Assn. 218 Minn. 369, 373, 16 N. W. 2d 313, 315 (1944), cited in Noreen v. Park Construction Co. 255 Minn. 187, 190, 96 N. W. 2d 33, 36 (1959). In this case, where the issue to be determined is the nature and effect of a writing, the contents of which is not disputed, the general rule is particularly applicable. See, Crowe v. Gary State Bank, 123 F. 2d 513 (7 Cir. 1941).

[3] See, also, Ballard v. Friedman, 151 Minn. 493, 187 N. W. 518 (1922); Moore v. Allen, 109 Minn. 139, 123 N. W. 292 (1909); Libby v. Parry, 98 Minn. 366, 108 N. W. 299 (1906); C. H. Phinney Land Co. v. Coolidge-Schussler Co. 97 Minn. 204, 105 N. W. 553 (1906); Womack v. Coleman, 92 Minn. 328, 100 N. W. 9 (1904); Joslyn v. Schwend, 85 Minn. 130, 88 N. W. 410 (1901).

The respective obligations of the parties were set forth in the escrow letter quoted above. Their nature and extent were dependent on the manner in which the escrow terminated, either by plaintiff's deposit of the balance of the purchase price with the escrow agent before October 31, 1973, or his failure to do so. Whether the latter or the former occurred was wholly within the discretion of plaintiff. His only obligations which were absolute were (1) to accept the forfeiture of his $30,000 deposit in the event he chose not to purchase the property, and (2) to provide insurance coverage during the period of the escrow. It is evident from the terms of the agreement that "it gives to the second party [plaintiff] the mere privilege of buying the property if he chooses." Wurdemann v. Hjelm, *supra*. Thus, it must be concluded that the agreement expressed in the escrow letter is an option.

Plaintiff cites the forfeiture provision of the escrow letter in support of its position, but to no avail. We have in past cases construed as options agreements containing comparable forfeiture provisions. In Womack v. Coleman, 92 Minn. 328, 100 N. W. 9 (1904), we considered an agreement which contained a forfeiture provision and the further statement that "upon said forfeiture, [the agreement] shall be absolutely null and void as to all parties hereto." 92 Minn. 330, 100 N. W. 10. In holding the agreement was an option, this court said:

"In the contract under consideration, defendant Coleman had the option to make the subsequent payments and accept the title, if good, or, if he chose, refuse it, even if marketable, and lose the $15,000 placed in escrow; and until he had obligated himself as an absolute purchaser of the land, either by acceptance of the title, or by the making of subsequent payments, as provided, no title passed to him, he acquired no interest as a purchaser under the contract, within the meaning of chapter 223, p. 431, Laws 1897 [forerunner of Minn. St. 559.21], and no notice was required on the part of plaintiff to terminate his rights." 92 Minn. 334, 100 N. W. 11.

See, also, C. H. Phinney Land Co. v. Coolidge-Schussler Co. 97 Minn. 204, 105 N. W. 553 (1906); Libby v. Parry, 98 Minn. 366, 368, 108 N. W. 299, 300 (1906). Moreover, the forfeiture provision limits defendants' remedies to the retention of the $30,000. They are not free to elect between remedies as is characteristic of contracts for the sale of land. It is reasonably clear that the $30,000 was the consideration for the irrevocable offer.

■ Plaintiff's second contention is that the agreement, even if subject to termination by its terms on October 31, did not so terminate because the sellers, through their conduct and representations, extended the time in which the option could be exercised to January 15 of the next year. The trial court ruled that any such extension must be in writing or be barred by the statute of frauds, Minn. St. 513.05.[4]

It would appear that our decision in Shaughnessy v. Eidsmo, 222 Minn. 141, 23 N. W. 2d 362 (1946), where it is held that a contract conferring an option to purchase land, because it conveys no interest in land, is not within the statute of frauds, would be sufficient answer to the disposition in the trial court. It is not. The reason it is not, as was recognized in Shaughnessy, is that in enforcing the option either by suit for specific performance or damages, the basis of the action is the contract for sale contemplated in the option agreement, and that is subject to the statute.

In Callender v. Kalscheuer, 289 Minn. 532, 184 N. W. 2d 811 (1971), we were confronted with a set of circumstances similar to those in the instant case. The plaintiff alleged that a written offer had been extended orally beyond the expiration date contained in the writing. The written acceptance in the form of an earnest money contract signed only by plaintiff was submitted

---

[4] "Every contract * * * for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the * * * sale is to be made * * *."

to the defendants subsequent to the date of expiration. We concluded:

"Under the statute, if an owner of land makes a definite and complete written offer to sell, written acceptance of the offer by the other party results in the formation of an enforceable contract. * * * If we assume that the letter of January 30 was an offer and if plaintiff had submitted his acceptance by February 5, there would be no question of compliance with the statute of frauds. But plaintiff did not submit his acceptance until February 8, 3 days after the expiration of such assumed offer.

"A contract would have been formed, therefore, only if the estate had granted plaintiff an extension of time within which to accept the offer. If the time for acceptance of an offer is limited, as here, the limit is absolute and time is of the essence. * * * Although plaintiff alleges that there was such an extension, he concedes that it was not in writing. Since there was no written extension of time, plaintiff's acceptance on February 8 did not result in a legally enforceable contract." 289 Minn. 533, 184 N. W. 2d 812.[5]

---

[5] Our decision in Shaughnessy v. Eidsmo, 222 Minn. 141, 23 N. W. 2d 362 (1946), as illustrated in Callender v. Kalscheuer, 289 Minn. 532, 184 N. W. 2d 811 (1971), can be misleading to the unwary. While we held in Shaughnessy that an option to purchase is not subject to the statute of frauds and need not be in writing, if it is to be relied on to establish a part of the contract of sale, it had better be in writing. Shaughnessy contains a forewarning to that effect. However, we then went on to hold that the contract of sale had been taken out of the statute by part performance. Certainly the better practice is to reduce options to writing.

We are not asked nor required to reconsider the wisdom of Shaughnessy in this case and do not do so. Nor are we certain that a change in the law would affect the results here. However, we note that this court's position that options are not within the statutes of frauds is very definitely a minority view. See, Professor Corbin's discussion at 2 Corbin, Contracts, §§ 417, 418. For jurisdictions subjecting option contracts to the statute, see, e. g., Pigeon v. Hatheway, 156 Conn. 175, 239

Callender also illustrates why the doctrine of equitable estoppel, urged upon us by plaintiff, is not applicable to bar defendants from relying on the October 31 termination. In Scheerschmidt v. Smith, 74 Minn. 224, 77 N. W. 34 (1898), we recognized that a contract subject to the statute of frauds could not be modified orally. However, speaking through Mr. Justice Mitchell, we went on to hold that—

"* * * in such case [the vendor] could not declare the contract forfeited for nonpayment until the plaintiff had a reasonable time thereafter in which to make payment, because the failure to pay on due day was caused by the defendant's own conduct. Undoubtedly plaintiff must recover, if at all, on the written contract. *But the distinction must be kept in mind between the contract itself, which is within the purview of the statute, and the subsequent performance, which is not.* The oral stipulation for an extension of the time of payment goes simply to the question of performance, constituting an excuse, as it does, for the failure to perform according to the terms of the written contract, and a reason why the defendant had no right to declare a forfeiture on account of such failure. Courts have often indulged in some refined reasoning as to the grounds of the rule, but they seem generally to agree that even as to contracts within the statute of frauds a waiver of a forfeiture for nonperformance, according to the terms of the written contract, may be proven by parol. Perhaps as good a ground as any upon which to put the rule is that of equitable estoppel, that he who prevents a thing being done shall not avail himself of the nonperformance which

A. 2d 523 (1968); Gulf Oil Corp. v. Willcoxon, 291 Ga. 462, 86 S. E. 2d 507 (1955); Robison v. Moorefield, 347 Ill. App. 508, 107 N. E. 2d 278 (1952); Fraley v. Null, Inc. 244 Md. 567, 224 A. 2d 448 (1966); Nason v. Morrissey, 218 Miss. 601, 67 So. 2d 506 (1953); Stevenson v. Titus, 332 Pa. 100, 2 A. 2d 853 (1938); Watkins v. Arnold, 60 S. W. 2d 476 (Tex. Civ. App. 1933); McGuirk v. Ward, 115 Vt. 221, 55 A. 2d 610 (1947); Bratt v. Peterson, 31 Wis. 2d 447, 143 N. W. 2d 538 (1966).

he himself has occasioned." 74 Minn. 228, 77 N. W. 35. (Italics supplied.) [6]

Plaintiff would have us apply that principle in order to establish an element of the contract of sale underlying his action, i. e., a continuing offer of sale through January 15, 1974. In Scheerschmidt, Mr. Justice Mitchell draws the critical distinction between the contract of sale and its performance, the former being within the statute and the latter without. Here, as in Callender, we are confronted not with a waiver of the time for performance of a *completed* contract of sale, but rather with the extension (by waiver) of the time within which an offer can be accepted in order to *form* a completed contract of sale. Equitable estoppel cannot accomplish that task and avoid the bar of the statute of frauds.

However, even if plaintiff could show that there was an agreement to extend the August 21, 1973, agreement to January 15, 1974, and that somehow the extension is not subject to the statute of frauds, plaintiff admittedly did not have the funds available to close the transaction on January 15, 1974. He merely had a loan commitment and admittedly could not have had the funds in his hands for at least a week.

■ In conclusion, we hold (1) that the agreement of the parties as contained in the escrow letter is an option, and not a contract of sale, and therefore is not subject to the notice of cancellation provision contained in Minn. St. 559.21, and (2) that the

---

[6] See, also, Bemis Bros. Bag Co. v. Nesbitt, 183 Minn. 577, 237 N. W. 586 (1931); McDonald v. Union Hay Co. 143 Minn. 40, 172 N. W. 891 (1919). Our decision in Malmquist v. Peterson, 149 Minn. 223, 183 N. W. 138 (1921), where we affirmed the trial court's ruling that the termination date in an option to purchase contract had been waived by the subsequent conduct of the parties did not involve the issue of compliance with the statute of frauds, nor does our recent decision of Nodland v. Chirpich, 307 Minn. 360, 240 N. W. 2d 513 (1976), involving the excuse of a condition precedent to the formation of a contract by prevention or hindrance.

offer of sale embodied in the option agreement could not be extended other than in writing and therefore any action on the underlying contract of sale is barred by the statute of frauds. We are convinced this was a proper case for summary judgment.

Affirmed.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.