**Rodney M. THOE, Appellant,**

v.

**Shirley RASMUSSEN, et al., etc., Respondents.**

**No. 81–701.**

Supreme Court of Minnesota.

Aug. 13, 1982.

Gustafson, Hanson & Krueger, Brainerd, for appellant.

Ryan, Ryan, Ruttger & Drake and Max J. Ruttger, III, Brainerd, for respondents.

WAHL, Justice.

Rodney M. Thoe appeals from a judgment of the district court which denied his motion to enjoin respondents from trespassing upon, or canceling a contract for deed pertaining to, the property in question and which granted respondents' immediate pos-

session of that property. The trial court did not make any determination as to the obligation remaining under the contract for deed. Appellant contended that his substituted performance satisfied the contract for deed and that the contract for deed should be reinstated. We agree and order its reinstatement.

Appellant Rodney M. Thoe and respondent Sandra Rasmussen were husband and wife in 1978. Sandra is the daughter of Shirley Rasmussen and granddaughter of Howard and Bernice Noyes.

In November 1977, Rodney entered into a contract for deed with Charles Gillette for 78.85 acres, which is the subject matter of this case.[1] The purchase price was $15,900. Rodney contributed $500 and borrowed $3,500 from the Noyeses to make the 25% down payment. In April 1978, the fee interest in the property was conveyed by Gillette through a warranty deed to Howard and Bernice Noyes. Rodney testified that his wife's grandparents purchased the fee interest from Gillette, an Illinois resident, to facilitate the resale, by Rodney and Sandra, of small parcels of the property.

On May 1, 1978, Rodney and his wife, Sandra, as vendees, executed a contract for deed with Howard and Bernice Noyes as vendors (May contract). The purchase price was $15,687. The May contract provided that interest would accrue at the rate of 8%, that annual payments would be made on the principal in the amount of $500, and that monthly interest payments would be $104.55.[2] The critical language of the contract provided that "It is hereby agreed between the buyer and seller, that the buyer has the right to sell parcels of acreage during the life of this cotract [sic]. The buyer must execute warranty deed at own expence [sic]. *25% of selling price must be paid to seller on principle* [sic]." (Emphasis added.) Rodney and Sandra made interest payments to the Noyeses in May of $46 and

in July and August 1978 in the amount of $104.

On August 12, 1978, 15 acres of the subject property were sold to LeMay V. and Eva E. Johnson by a contract for deed (August contract) for a purchase price of $13,000. The terms of the sale provided for a $5,100 down payment, with the balance of $7,900 to be payable in monthly installments of $100 plus interest at 8%. The Noyeses had no part in the negotiations leading up to the sale to the Johnsons, but the Noyeses were listed on and executed the August contract, along with Rodney and Sandra, as vendors. The down payment of $5,100 was paid to Rodney and Sandra to cover expenses they incurred in selling the property. The Noyeses received none of the down payment but did receive all of the monthly principal and interest payments. Shirley Rasmussen, the Noyeses' daughter and successor in interest, continues to receive the monthly payments directly from the Johnsons.

Rodney and Sandra did not pay the Noyeses 25% of the selling price at the time of sale to the Johnsons, nor at any other time. Rodney testified that he understood that the Noyeses' receipt of the monthly payments from the Johnsons, on the August contract balance of $7,900, would be in lieu of the payment by Rodney and Sandra of 25% of the selling price. The Johnsons have paid to the Noyeses and Shirley Rasmussen at least $3,300 on the principal and $1,386.68 in interest, leaving a balance due of approximately $4,600 on the August contract.

Rodney testified that a new contract reflecting a reduction in the balance in the May contract and reduced payments was not drawn up with the Noyeses after the sale to the Johnsons because Mr. Noyes was sick and unable to travel to Brainerd to execute and record a new contract. On December 7, 1979, Bernice Noyes died, and

---

1. The legal description of the property in question is: Government Lot 3 and the Northwest Quarter of Southeast Quarter, Section 13, Township 44, Range 28.

2. The May contract was drafted by Sandra after Rodney and Howard Noyes had determined the substance of the contract. Because of the inexperience of the drafters, it did not provide for decreasing interest payments.

on January 7, 1980, Howard Noyes died. In July 1980, Shirley Rasmussen, mother of Sandra, received a deed conveying the subject property to her from the personal representative of Howard Noyes' estate.

On September 26, 1980, Rodney and Sandra were divorced. Their limited personal property was divided. Rodney was awarded the real property which is the subject of this suit, and Sandra was awarded $10,000 to be paid in equal monthly installments for 6 years in compensation for her interest in the real property. The unpaid balance on the property settlement remains a lien in favor of Sandra against the real property.

On October 23, 1980, Shirley Rasmussen caused a notice of cancellation of the May contract for deed to be served upon Rodney. The ground stated for cancellation was the "[f]ailure to pay Vendors 25% of selling price on principal of this contract upon resale." The trial court found that Shirley Rasmussen was entitled to possession of the property pursuant to the cancellation of the contract for deed.

This appeal raises several issues, but we find that it is resolved by determining whether the payments on the August interest by Johnson to the Noyeses and Shirley Rasmussen constitute substituted performance agreed to by the parties to the May contract. The trial court made no finding on this issue but concluded only that the statute of frauds prevented reconstruction of the May contract.

■ Our prior decisions hold that an oral agreement that modifies the method or time for performance is valid and not subject to the statute of frauds. Justice Mitchell stated the rule:

[T]he distinction must be kept in mind between the contract itself, which is within the purview of the statute, and the subsequent performance, which is not. The oral stipulation for an extension of the time of payment goes simply to the question of performance, constituting an excuse, as it does, for the failure to perform according to the terms of the written contract, and a reason why the defendant had no right to declare a forfei-

ture on account of such failure. Courts have often indulged in some refined reasoning as to the grounds of the rule, but they seem generally to agree that even as to contracts within the statute of frauds a waiver of a forfeiture for nonperformance, according to the terms of the written contract, may be proven by parol. Perhaps as good a ground as any upon which to put the rule is that of equitable estoppel, that he who prevents a thing being done shall not avail himself of the nonperformance which he himself has occasioned.

*Scheerschmidt v. Smith,* 74 Minn. 224, 228, 77 N.W. 34, 35 (1898). In *Rooney v. Dayton-Hudson Corp.,* 310 Minn. 256, 246 N.W.2d 170 (1976), we quoted the above language of Justice Mitchell, noting "the critical distinction between the contract of sale and its performance, the former being within the statute [of frauds] and the latter without." *Id.* at 267, 246 N.W.2d at 176. A leading authority notes:

The prevailing rule is that the parties may contract orally to modify their agreements as respects the manner of performance. Also, a parol modification with respect to the amount or medium of payment of the purchase price has been upheld.

8A Thompson, Real Property § 4455 at 324 (1963) (footnotes omitted).

■ Parol evidence that modifies the terms of a written agreement must be clear and convincing. *Hayle Floor Covering, Inc. v. First Minnesota Construction Co.,* 253 N.W.2d 809 (Minn.1977). At trial, appellant presented his own testimony and substantial documentary evidence in the form of his own reduced payments on the May contract and payments by the Johnsons made directly to the Noyeses by Shirley Rasmussen on the August contract to support his contention of an agreement for a substituted method of performance. Furthermore, the Noyeses made no demand for payment by appellant of the 25% of the August contract and, significantly, were signatories to that contract.

To avoid the delay and expense of further litigation, where a case has been fully developed at trial, we may determine any issues that are settled as a matter of law by the record. *Shell Oil Co. v. Kapler*, 235 Minn. 292, 301, 50 N.W.2d 707, 714 (1951); *accord, Southdale Center, Inc. v. Lewis*, 260 Minn. 430, 110 N.W.2d 857 (1961). We find, as a matter of law, that the Noyeses had agreed to accept periodic payments directly from the Johnsons on the August contract in the amount of $7,900 in lieu of 25% of the selling price of the August contract.

Reversed and remanded to the trial court for reinstatement of the May 1, 1978, contract for deed.