FRANSEN et al. v. REGENTS OF EDUCATION OF SOUTH DAKOTA.

(Circuit Court of Appeals, Eighth Circuit. September 21, 1904.)

No. 2,012.

1. CONTRACTS—ACTION FOR BREACH—EQUITABLE ESTOPPEL AS DEFENSE.

The provision of Civ. Code S. D. § 1287, that "a contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise," does not preclude the application of the doctrine of equitable estoppel to defeat an action for the nonperformance of a written contract where sufficient cause exists therefor, and such defense is, moreover, expressly recognized by section 1173.

2. SAME.

Where the failure of a state board to maintain full insurance on a public building while in course of construction, as required by the building contract, for the benefit of both parties, was induced by the objection of the contractors, who were chargeable with the expense, and their representations that they had procured sufficient insurance, made to officers and agents of the board, they are estopped to maintain an action against the board to recover their loss resulting from a fire on the ground of nonperformance of the contract.

3. SAME.

An architect employed by a state board to superintend the construction of a public building, and a local secretary of the board, having charge of financial matters connected with the building, represent the board in such sense that an estoppel in its favor may be created by statements made to them by the contractor with respect to insurance which the board was required by the contract to procure on the building, while in course of construction, in part for the contractor's benefit.

In Error to the Circuit Court of the United States for the District of South Dakota.

This was an action by Nels P. Fransen and Hans J. Fransen, partners as N. P. Fransen & Co., against the Regents of Education to recover damages alleged to have been sustained because of the failure of the latter to procure and maintain for their benefit insurance upon a public building in course of erection at Aberdeen, S. D. The plaintiffs were contracting builders, the defendant a body corporate created by a law of South Dakota with power to sue and be sued, and having the management and control of the educational institutions of the state. A written contract was entered into between the parties for the erection of a normal and industrial school building. The specifications which were a part of the contract required the contractors to secure policies of insurance, payable in case of loss to the defendant to reimburse it for advance payments made on the contract; but the contract itself contained a provision requiring the defendant to maintain full insurance on the building and the materials about the premises for the benefit of both parties, as their respective interests might appear, the premiums to be paid by the contractors. In September, 1901, during the progress of the work, the contractors, at the suggestion of a representative of the defendant, procured insurance to the amount of $5,000. On the 18th of the following December, the building, then in an incomplete condition, was almost totally destroyed by fire. No other insurance than that mentioned had been obtained. At that time the contractors had been paid the sum of $11,000, while the value of the material which had been furnished and the labor expended by them upon the building was $24,000. The proceeds of the policy of insurance which had been obtained was applied by the defendant toward the reconstruction of the building, and the contractors sustained a loss of $13,000, against which there was no protection by insurance. They claimed that their loss was due to the neglect of the defendant to procure insurance as provided by the language of the contract, and upon that ground their action was instituted. It was not

denied that as a matter of law the provision in the contract superseded the provision in the specifications, but, notwithstanding this, it appears that prior to the time of the fire both parties proceeded upon the assumption that the initiative in the procurement of insurance rested upon the contractors. One of the defenses interposed by the defendant—and it is the one upon which the case finally turned—was that by reason of certain acts and declarations of Hans J. Fransen, the member of the contracting firm who had charge of the work, the plaintiffs were estopped from complaining of defendant's neglect to procure and maintain the insurance. In support of this defense evidence was offered and received tending to establish the following facts: E. W. Van Meter was the defendant's architect and superintendent of construction. The $5,000 policy of insurance was procured by Hans J. Fransen at his suggestion about September 14, 1901. The latter complained of the excessive insurance rates. In the latter part of October Van Meter said to him that there ought to be more insurance, but Fransen said he hardly thought it was necessary, as the walls were newly plastered, the materials therein were wet, and the building was not then in condition to burn. He again complained of the high rate of premium. Van Meter again took up the subject of additional insurance early in November, when Fransen contemplated using artificial heat to dry the plastering, and for that purpose had ·placed coke and coal in the basement. He said to Fransen, "If you are going to put in fire there for the drying of the building, you had better get some more insurance," but Fransen objected to doing so, and said that with the introduction of the drying apparatus he would have a watchman, and that he thought that would be sufficient protection. He again mentioned the high rate of premium, and said that additional insurance was not needed. Van Meter informed Mr. Lincoln of one or more of these conversations.

Isaac Lincoln was the local secretary and general executive agent of the Board of Regents at Aberdeen, and the scope of his duties included the supervision of the financial phases of the work of construction and attention to the matter of insurance. In September, before any insurance was secured, he spoke to Fransen about it, and the latter replied: "I will take out $5,000 insurance. Will that satisfy you?" Some time in October Mr. Lincoln said to him: "See here, Fransen, Van Meter says you do not want to take out more insurance. You must take out some more. There ought to be more insurance on the building." To this Fransen replied, "I have got all the insurance on the building that is necessary now." Shortly afterwards, in response to another demand by Lincoln that more insurance be obtained, he said: "That building won't burn. There is not much inflammable material in it;" and, further, that a good deal of the lumber was piled outside, and he did not see any need of taking any more insurance then. In the last week of November or the first week of December, shortly after the third estimate had been made, this conversation occurred: "Lincoln: Well, now, you go and take out some more insurance. Fransen: Lincoln, there is not any need of any insurance. I have got old man Johnson as a watchman. He is careful and all right, and will look after things. Lincoln: I do not believe that is safe, and before you get any more money I am going to have some more insurance. Fransen: I am satisfied with the insurance. I am not particular about the insurance. There is no need of insurance. Lincoln: Why are you not willing to take it out? Fransen: I have got the contract on a pretty close margin, and I do not want to blow in any money in insurance. The premiums are high, and I can better afford, as long as I have got a watchman, to take my chances." Fransen never receded from this position before the fire occurred.

Dr. F. A. Spafford was the president of the board of regents. On November 27th or 28th he inspected the grounds and building. In a conversation with Fransen, Dr. Spafford asked him, "Have you plenty of insurance on this building?" Fransen replied, "Yes, I am looking after that matter all right myself." Dr. Spafford testified that he relied on Fransen's statement.

The record shows some conflict in the evidence touching these conversations, but, as the verdict was for the defendant, it should be assumed that the jury gave credence to the foregoing recitals, and that Fransen made the declara· tions therein indicated.

Ambrose Tighe (O'Reilly & Burns and J. M. Lawson, on the brief), for plaintiffs in error.

Philo Hall, for defendant in error.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The written contract between the plaintiffs and the defendant cast upon the latter the duty of procuring the insurance upon the building during the period of construction. The insurance protection was to be for their joint benefit, but at the cost of the former. The plaintiffs (now plaintiffs in error) rely upon a provision of the Civil Code of South Dakota that "a contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise" (section 1287; Mettel v. Gales, 12 S. D. 632, 82 N. W. 181; Barnard & Leas Mfg. Co. v. Galloway, 5 S. D. 205, 58 N. W. 565), and contend that the defendant is seeking to alter the contract and to escape its obligations thereunder by proof of oral declarations which do not meet the statutory requirements. In view of the acts and statements of one of the plaintiffs, which we have recited, and the effect of which is chargeable to both of them, the Circuit Court by appropriate instructions submitted to the jury the question whether the plaintiffs were not estopped from complaining that the defendant had failed to procure the insurance. The jury determined that question in favor of the defendant. The provision of the Code above quoted relative to the alteration or modification of a written contract does not preclude the application of the doctrine of equitable estoppel when sufficient cause therefor exists. More than this, the course of the Circuit Court in this particular was justified by another provision of the laws of that state confirmatory of the rule already existing, and which, so far as material to the matter in hand, is as follows:

"The want of performance of an obligation or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes, to the extent to which they operate: * * * When the debtor is induced not to make it, by an act of the creditor intended or naturally tending to have that effect, done at or before the time at which such performance or offer may be made, and not rescinded before that time." Rev. Civ. Code, § 1173.

As to this the plaintiffs contend that a necessary and essential element in an equitable estoppel consists in an inducement extended by the conduct of the person to whom the estoppel is sought to be applied, and the reliance thereon by him who invokes the application of the doctrine; and that in the case at bar there is wholly lacking any evidence that the defendant, its officers or representatives, were led to refrain from procuring the insurance because of the conduct of the plaintiffs. There is thus presented in narrow compass the principal question in this case: Was there a reliance by the defendant, its officers or representatives, who were charged with the protection of its interests, upon a course of conduct of the plaintiffs which was intended to induce them not to obtain the in-

surance or which naturally tended to that result? This question should be answered in the affirmative, and the requisite element of a complete estoppel is thereby supplied. That there was an intentional purpose of inducement in the repeated declarations of that one of the plaintiffs who had immediate charge of the work of construction is clearly shown by the record. He protested vigorously and continuously against the procurement of additional insurance, the cost of which, under the contract, was chargeable to his firm. He assigned a number of reasons for his position, which seemed at the time to be plausible. In so far as the insurance authorized by the contract was for the protection of the plaintiffs themselves, and that is the only phase of the matter with which we are now concerned, one of the plaintiffs declared that they did not need it, could not afford it, and did not want it. In the face of his persistent opposition it would have been an unusual and exceptional act had the defendant forced upon the plaintiffs, at their expense, a protection which they did not desire. It is equally clear that these declarations naturally tended to produce the result which was desired and sought by the plaintiffs, namely, that no more insurance be procured which they would have to pay for. And it is not perceived that it is material or important as affecting the conclusion that both parties acted upon the supposition that the mere duty of going to the office of an insurance agent and obtaining the policy or policies of insurance rested upon the plaintiffs rather than upon the defendant as provided by the contract.

The failure to keep the building adequately insured was due wholly to the conduct of the plaintiffs, and this necessarily signifies reliance on the part of the defendant upon such conduct. In order to create an estoppel in pais it is not necessary in every case that there be an affirmative declaration by one party that he relied upon the acts of the other. Such reliance may appear as an irresistible inference from established facts and circumstances. In the case before us the entire cost and expense of protection of the parties from loss or damage by fire was chargeable to the plaintiffs, and there could have been, in the very nature of the situation, no other motive on the part of the representatives of the defendant in refraining from procuring insurance upon the uncompleted building than that caused by the plaintiffs' expressed opposition thereto. Moreover, it may be observed that about three weeks before the fire the president of the defendant, after an inspection of the premises, inquired of one of the plaintiffs whether he had sufficient insurance upon the building, and the latter replied, "Yes, I am looking after that matter all right myself;" and the president testified that after that assurance he made no further inquiry, and relied on the statement. The verdict of the jury is conclusive as to the facts, and we are of the opinion that ample justification may be found in them for the enforcement of an equitable estoppel, the rules governing which were sufficiently expressed in the instructions given by the Circuit Court.

Criticism is made of a paragraph of the instructions relating to the requisite conditions of an estoppel. It is true that a few words were omitted — doubtless inadvertently — and that the omission

somewhat impaired the sense of that part of the instructions, but almost immediately thereafter the court accurately and correctly stated the converse of the proposition. We are of the opinion that, taking the charge as a whole, the jury could not have been misled as to the true rule by which they were to be guided. Complaint is also made of the admission of the testimony of the architect and superintendent of construction, of the local secretary, and of the president of the defendant as to the declarations of one of the plaintiffs regarding the insurance. These men sustained such a relation to the defendant that it was clearly their province and within the scope of their powers and duties to take up and discuss with the plaintiffs the matters connected with the performance by them of their contract, and to see to it that they complied with its stipulations. No debt or obligation of the defendant was to be created. The matter of insurance was simply one of those details of the contract the burden of which was on the contractors. The architect and superintendent, the local secretary and the president, stood in the place of and represented the defendant corporation. What was said to them was in legal effect said to the defendant. Their reliance thereon was the reliance of their principal, and the protective effect of the resulting estoppel inured to its benefit.

The judgment of the Circuit Court will be affirmed.