**James N. ENDRES, Plaintiff
and Appellee,**

v.

**Jesse E. WARRINER and Agnes D. Warriner, Defendants and Appellants.**

**No. 13194.**

Supreme Court of South Dakota.

Argued March 23, 1981.

Decided June 17, 1981.

Thomas F. Burns of Gribbin, Burns & Eide, Watertown, for plaintiff and appellee; Francis C. Burns of Gribbin, Burns & Eide, Watertown, on brief.

Thomas K. Wilka of Burns, Hagen & Wilka, Sioux Falls, for defendants and appellants.

WOLLMAN, Chief Justice.

Appellants, Jesse E. Warriner and Agnes D. Warriner, appeal from the entry of judgment that granted James N. Endres (appellee) specific performance of a real estate contract. We affirm.

Jesse Warriner owns a quarter section of land in Codington County, South Dakota. His brother and sisters (hereinafter "siblings") owned two adjacent quarter sections of land. On July 2, 1979, appellee, who had rented these three quarters for approximately five years, entered into a contract to purchase the two quarters of land from the siblings. That same day appellee entered into a contract with appellants for the purchase of Jesse's quarter section in order to provide access to the other two quarters. Under the terms of the latter contract, appellee was to pay appellants $46,000 on or before January 1, 1980, plus eight percent interest from the date of the agreement. The contract was conditioned upon the completion of the sale of the siblings' quarters.

Appellee thereafter applied for a loan from the Farmers Home Administration.[1] According to appellee, he realized in September of 1979 that there might be some delay in receiving the loan proceeds; as a result, he had a conversation with Jesse Warriner regarding certain fall farm work that appellee wanted to do on the quarter section.

Appellee testified, and the trial court found, that appellee had spoken with Jesse Warriner in November of 1979 and explained to Jesse that he wanted to put a well and waterline on the quarter section. Appellee asked Jesse if it mattered whether the loan proceeds were late, because if it did, appellee did not want to dig the well. Jesse replied that "it was okay." Appellee told Jesse that he was proceeding with the loan and stated that there were no problems but simply some unforeseen delays. Jesse then assured appellee that appellee should not be concerned about not being able to buy the farm or losing any investment in the well and waterline.

1. Appellee intended to purchase Jesse Warriner's quarter, the siblings' quarters and some other land with the proceeds of this one loan.

The loan proceeds did not arrive on January 1, 1980. Appellants made no demand for the purchase price on January 1, did not tender a deed, and did not attempt to terminate the contract at that time. Sometime prior to January 13, 1980, appellee had a conversation with one of the siblings and explained the delay to her.

There was testimony that on January 13, 1980, appellee explained to Jesse that he (appellee) was still proceeding with the loan and that the proceeds were expected soon. Jesse replied that he understood how things got slowed down. He did not indicate that there was any problem with a further delay. Appellee testified that he reminded Jesse that the Warriners were still drawing interest on the contract price. Appellants did not demand the purchase money nor tender a deed on this occasion. The parties set no other date for completion of the contract.

On February 1, 1980, appellants sent appellee a letter attempting to terminate the contract because of appellee's failure to pay the contract price plus interest on or before January 1, 1980. On February 22, 1980, appellee tendered the purchase price plus interest to appellants. Appellants refused to convey title.

Appellee purchased the siblings' quarters on February 22, 1980. There was testimony that appellee could have gotten an interim loan from a different source to pay for the land on or before January 1, 1980, had he not been assured that there would be no problem with payment after that date.

I

Appellants contend that the grant of specific performance was improper because there was no mutuality of remedy. Appellants argue that appellee could have unilaterally abrogated the contract without recourse to appellants by virtue of the following provision of the contract:

2. SDCL 21–9–4 provides as follows:
Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to

It is agreed that this contract is conditioned upon the completion of the sale of [the siblings' quarters] to the Purchaser herein. In the event that said sale has not been completed prior to January 1, 1980, or for any reason cannot be completed, this contract shall be null and void.

Citing SDCL 21–9–4,[2] appellants contend that specific performance could have been granted only if appellee had fully performed under the contract or appellants could have compelled appellee's performance under the contract.

Initially, we recognize that "[t]he modern decisional tendency is against lending the aid of courts to defeat contracts on technical grounds of want of mutuality." *Texas Gas Utilities Company v. Barrett*, 460 S.W.2d 409, 412 (Tex.1970) (citation omitted).

It is not essential that mutuality of remedy exist at the inception of the contract. *J. I. Case Threshing Mach. Co. v. Farnsworth*, 28 S.D. 432, 134 N.W. 819 (1912). Rather, "it is sufficient if such mutuality of remedy is available at the time suit is filed or even at the time of the decree." 71 Am.Jur.2d *Specific Performance* § 23 (1973). By tendering the purchase price and bringing this suit for specific performance, appellee indicated that he was willing to complete the contract and submitted himself to the jurisdiction of the court and was bound by its determination. Therefore, mutuality of remedy existed at the time the suit was filed. *Harper v. Goldschmidt*, 156 Cal. 245, 104 P. 451 (1909); *Mangus v. Porter*, 276 So.2d 250 (Fla.Dist. Ct.App.1973); *Jones v. Barnes*, 105 A.D. 287, 94 N.Y.S. 695 (1905).

Appellants also contend that the contract was not supported by adequate consideration. Appellants argue that under the previously quoted provision of the con-

which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance.

tract, appellee could have refused to perform the siblings' contract and thus relieved himself from any obligation under the contract in question here.

Appellee's promise to buy Jesse Warriner's land was conditioned upon the completion of the sale of the siblings' land. A conditional promise may be adequate consideration.

> Very often parties reach an agreement, the performance of which is agreed to be contingent upon some future event. There is no doubt that if the happening of the event is outside the control of the parties, the agreement does not fall for lack of consideration. If, however, the happening of the event is within the control of one of the parties, is his promise illusory? The better decisions have through a process of interpretation answered in the negative. . . .

J. Calamari & J. Perillo, Law of Contracts § 4–18 (2d ed. 1977) (footnotes omitted). See also Restatement (Second) of Contracts § 78 (Tent. Draft No. 2, 1965).

A promise is illusory "only if it in no way limits the promisor's future action." *Douglas v. City of Dunedin*, 202 So.2d 787, 788 (Fla.Dist.Ct.App.1967). We agree with the following statement from the Law of Contracts, supra, at 166 (footnotes omitted):

> Agreements of this kind serve a vital purpose. They are entered into with the understanding that both parties are firmly committed to the performance of the agreement provided that cooperation is forthcoming from a financial institution, landlord or licensing authority. The purchaser or lessee has wisely protected himself, with the seller's consent, against the possibility that he will be unable to obtain the financing, lease or license. In so doing, however, he has impliedly promised to use his best efforts to bring about the happening of the condition to his promise. His conditional promise is thus by no means illusory.

So also here, appellee impliedly promised to use his best efforts to complete the purchase of the siblings' quarters. We hold that there was adequate consideration. See also *Petroleum Refractionating Corp. v. Kendrick Oil Co.*, 65 F.2d 997 (10th Cir. 1933); *Scott v. Moragues Lumber Co.*, 202 Ala. 312, 80 S. 394 (1918); *Vickrey v. Maier*, 164 Cal. 384, 129 P. 273 (1912); *Douglas v. City of Dunedin*, supra.[3]

## II

Appellants contend that the trial court erred in finding that the time of payment and the time of the essence clauses in the contract were waived by appellants. We do not agree.

There was conflicting testimony with regard to the substance of various conversations between appellee and Jesse Warriner subsequent to July 2, 1979. It is for the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony, and a reviewing court is required to accept that version of the evidence, including the inferences that can be fairly drawn therefrom, that is favorable to the trial court's action. *Nicolaus v. Deming*, 81 S.D. 626, 139 N.W.2d 875 (1966). After reviewing the evidence, we conclude that the finding of the trial court is not clearly erroneous. SDCL 15–6–52(a); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970).

Appellants also contend that SDCL 53–8–7 is applicable here. SDCL 53–8–7 provides:

> A contract in writing may be altered by a contract in writing without a new consideration or by an executed oral agreement, and not otherwise.

This argument fails because we are not convinced that a waiver of the time of payment is an alteration of a written contract within the meaning of SDCL 53–8–7. A waiver does not change or alter the terms of a contract. Rather, the contract remains with its original provisions but the

---

**3.** In view of our holding, it is unnecessary to discuss any parol evidence questions raised by appellants. See generally *McCollam v. Littau*, 307 N.W.2d 144 (S.D.1981).

right to enforce payment at the time set forth in the contract is suspended until the time of extension has expired. See *Zastrow v. Knight*, 56 S.D. 554, 229 N.W. 925 (1930). Additionally, we note that the provisions of SDCL 53–8–7 do not preclude the application of the doctrine of estoppel, *Fransen v. Regents of Education of South Dakota*, 133 F. 24 (8th Cir. 1904), which is closely akin to waiver.

Appellants also contend that Jesse Warriner was not the agent of Agnes Warriner and that therefore there was no waiver by her of the time of payment clause. Appellants cite SDCL 59–2–3, which provides:

> An oral authorization is sufficient for any purpose, except that an authority to enter into a contract, other than a negotiable instrument, required by law to be in writing can only be given by an instrument in writing.

As we have already stated, however, the waiver, as contrasted with the contract, was not required to be in writing.

■ The question remains whether there is evidence to support the trial court's finding that Jesse Warriner acted as agent for Agnes Warriner. The record reflects that Jesse Warriner was present and apparently acted on behalf of his wife during all phases of the negotiation process with regard to the contract. Although Agnes Warriner, who had only a homestead interest in the real estate, might have been present at some of the meetings between the parties, apparently she did not actively participate in the contract negotiation meetings and was not present when appellee and Jesse visited an attorney to have the contract prepared. We hold that this finding is not clearly erroneous. SDCL 15–6–52(a).

## III

■ Appellants' final contention is that the equities lie with appellants and that the trial court therefore erred in granting appellee the equitable relief of specific performance.

By waiving the time of payment clause, appellants consented to the postponement of payment to a time subsequent to that fixed by the contract. Appellee relied on that consent and accordingly did not make the January 1, 1980, payment as required by the contract, although he could have procured a loan elsewhere and made timely payment had appellants not waived the time of payment clause. After allowing appellee to rely detrimentally on their waiver, appellants attempted to treat the nonperformance of the waived contract provision as a breach of contract. Appellants gave no notice of any withdrawal of the waiver and did not give appellee a reasonable time to complete the contract. Appellants' acts and conduct belie their argument that the equities lie with them. Accordingly, we hold that the trial court did not abuse its discretion in ordering specific performance. *Dolan v. Hudson*, 83 S.D. 144, 156 N.W.2d 78 (1968).

Any issues not addressed are either without merit or are rendered moot.

The judgment is affirmed.

All the Justices concur.