#25751-a-SLZ

**2011 S.D. 24**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STEVEN D. JOHNSON,                                    Plaintiff and Appellee,

    v.

HARRELL L. SELLERS, Husband,                    Defendant and Appellant,

and

SANDRA L. GREEN, Wife,                              Defendant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

* * * *

HONORABLE DAVID R. GIENAPP
Judge

* * * *

RICHARD J. HELSPER
REED T. MAHLKE of
Glover & Helsper, PC                                    Attorneys for plaintiff
Brookings, South Dakota                              and appellee.

ELLIE M. VANDENBERG                            Attorney for defendant
Volga, South Dakota                                    and appellant.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 21, 2011

OPINION FILED **05/25/11**

#25751

ZINTER, Justice

[¶1.]        Steven Johnson sued Harrell Sellers for specific performance of a written agreement to purchase real estate. Sellers refused to sell after the transaction was unable to be closed on the agreed date. On cross motions for summary judgment, the circuit court ordered specific performance. The court ruled that Sellers waived the right to insist on the initial closing date and that fulfillment of the contract was possible. We affirm.

*Facts and Procedural History*

[¶2.]        Johnson entered into a written agreement to purchase real estate from Sellers. The thirty-four acre parcel included a residence and farmland. The purchase agreement, which was prepared by Johnson's attorney, incorrectly indicated that Sellers was a single person.[1] Sellers was married at the time but was in the process of obtaining a divorce from Sandra Green. Green and Sellers lived in the residence during their marriage. Green moved out in October 2008, and Sellers started the divorce in January 2009.

[¶3.]        The May 21, 2009, purchase agreement specified a closing date of June 15, 2009. An initial title insurance commitment was prepared on May 22. The title commitment disclosed that Sellers was married and that Green's name was not on the title. Johnson's attorney mailed a copy of the title commitment and a letter to both parties on June 3. The letter again incorrectly stated that Sellers was single.

---

1.      Johnson was unaware that Sellers was married at the time they executed the agreement.

[¶4.]     Some time after signing the purchase agreement, Sellers told his attorney about the agreement.  Because of Green's potential homestead rights[2] and the pending divorce,[3] Sellers's attorney told him that he could not sell the property

---

2.     Homestead rights protect a spouse's residential property by requiring both husband and wife to join in a conveyance of their homestead.  SDCL 43-31-17 provides: "A conveyance or encumbrance of a homestead by its owner, if married and both husband and wife are residents of this state, is valid if both husband and wife concur in and sign or execute such conveyance or encumbrance either by joint instrument or by separate instruments."

Any "attempted conveyance of the homestead that is not joined in by both husband and wife is absolutely void from the beginning inasmuch as the sole-signing vendor is entirely lacking in power and authority to transfer the property." *Speck v. Anderson*, 318 N.W.2d 339, 343 (S.D. 1982).  But the homestead exemption is not an "ab initio voiding of [an] otherwise arguably valid option." *Id.*  SDCL 43-31-17 does not create in the non-owner spouse any estate in the land because the right of homestead is a mere privilege. *Speck*, 318 N.W.2d at 344.  Therefore, "when the need for protection for the family ceases, then there is no longer any reason for the homestead." *Id.* "The homestead exemption is . . . temporary and exists only so long as the conditions prevail under which it was allowed by the homestead law." *Id.*

Consequently, if the time for performance of a contract coincides with the time when the homestead interest no longer exists, the contract may be validly performed.  Further, a spouse's homestead interest in the other spouse's property ceases when a decree of divorce is entered.  "The relation of husband and wife having terminated, the wife ceased to have any claim upon or right in the husband's property, whether homestead or otherwise, unless such rights were preserved by the decree of the court." *Brady v. Kreuger*, 8 S.D. 464, 470, 66 N.W. 1083, 1085 (1896).

3.     SDCL 25-4-33.1 restrains spouses from transferring marital assets after a summons and complaint for divorce has been filed:

> Upon the filing of a summons and complaint for divorce . . . , and upon personal service of the summons and complaint on the defendant, a temporary restraining order shall be in effect against both parties until the final decree is entered, the complaint dismissed, or until further order of the court: (1) Restraining both parties from transferring, encumbering, concealing, or in any way dissipating or

(continued . . .)

without Green's permission.  On June 4, Green's attorney indicated that Green would not authorize the sale.  On June 9, Sellers's attorney wrote Green's attorney asking for permission to complete the sale.  On June 15, Green's attorney responded that Green had not yet made a decision whether to allow the sale.  On June 19, Green's attorney indicated that Green would not consent to the sale for the amount specified in the purchase agreement.  Partly as a result of these difficulties, the closing did not occur on June 15.

[¶5.]     There were also difficulties in closing because of Sellers's inability to move his personal property from the real estate.  Johnson indicated in his deposition that "a few days" before the closing "Harrell [Sellers] had expressed that he wouldn't be able to have all of his stuff moved by [the June 15 closing]."  In his affidavit supporting summary judgment, Johnson explained that "[o]n or about June 10, 2009, Sellers told me that he wouldn't be ready to close by the 15, due to a pending auction sale, scheduled for June 27, 2009."  Johnson responded "that, if [Sellers] needed more time, that was no problem."  From June 10 through June 27, Johnson helped Sellers prepare Sellers's personal property for the auction.  Sellers admitted in his deposition that he "asked for a continuance" of the June 15 closing.  Sellers indicated that he "needed several months to clear out."

[¶6.]     During this same period of time, Sellers was clearing the title problems caused by the pending divorce.  On June 25, Sellers signed a stipulation and agreement in the divorce proceeding to vest all Green's rights in the real estate

_____

(. . . continued)
          disposing of any marital assets, without the written consent of the
          other party or an order of the court[.]

in Sellers. On July 22, Green signed the stipulation. Notwithstanding this resolution of the problems holding up the closing and notwithstanding Sellers's oral request to extend the closing, Sellers sent a letter to Johnson on July 24 "rescinding" the purchase agreement. Sellers stated that the property was no longer for sale "due to aspects of [his] divorce."

[¶7.] On July 31, Johnson filed a notice of lis pendens. On August 4, the divorce court entered a judgment and decree of divorce awarding all interest in the property to Sellers. On August 5, Johnson filed this suit for specific performance of the agreement. Sellers was served on August 13.

[¶8.] On August 14, Sellers's attorney sent a letter to Johnson indicating that Sellers then agreed to perform the agreement. The letter stated that "Mr. Sellers agrees that the real property will be sold to Mr. Johnson." A new closing date of September 16 was suggested.[4] But on August 21, Sellers's attorney sent another letter stating that he was no longer representing Sellers. This letter indicated that Sellers then intended "to contest and defend himself in the lawsuit for specific performance."

[¶9.] Following the filing of cross motions for summary judgment, the circuit court ruled that Sellers continued the date for closing without objection from

---

4. The letter stated:

> As Mr. Johnson wishes to close on the purchase of the real estate from Harrell Sellers, Mr. Sellers agrees that the real property will be sold to Mr. Johnson. Please do not seek to serve the Summons and Complaint upon Mr. Sellers. That will be a waste of money.
> I believe Mr. Johnson talked about a potential closing date of September 16. I believe that can be done. . . .

Johnson. The court further ruled that the entry of the judgment and decree of divorce resolved any title problems. Because performance of the agreement was then possible, the court rejected Sellers's impossibility of contract defense. The court awarded specific performance, noting that specific performance was the presumed remedy for breach of an agreement to sell real property.

[¶10.]    Sellers appeals raising two issues:

1.    Whether the circuit court erred in granting summary judgment for Johnson.

2.    Whether the circuit court abused its discretion by ordering specific performance of the purchase agreement.

*Decision*

[¶11.]    This Court reviews a grant of summary judgment "to determine whether the moving party has demonstrated the absence of any genuine issue of material fact and entitlement to judgment on the merits as a matter of law." *DRD Enterprises, L.L.C. v. Flickema*, 2010 S.D. 88, ¶ 10, 791 N.W.2d 180, 183-84. Sellers does not contend that there are genuine issues of material fact. "The circuit court's conclusions of law are reviewed de novo." *Id.*

[¶12.]    Both parties agree that the closing could not occur as scheduled on June 15. The closing was not possible on June 15 because of: the pending divorce and Green's refusal to agree to the sale on the proposed terms; the potential title problem regarding homestead rights; and Sellers's desire to have an auction of his personal property on the premises. By August 4, however, these impediments to closing had been resolved, and Sellers was able to convey title to the real estate.

[¶13.]    Notwithstanding the ability to convey good title, Sellers argues that the impossibility of performance doctrine justified his failure to perform the

contract. Sellers contends that by the time the title problems had been resolved, it was no longer possible to close the transaction on the June 15 date specified in the agreement. Sellers relies on SDCL 20-2-2, which provides that "[a] condition in a contract, the fulfillment of which is impossible or unlawful, within the meaning of chapter 53-5 relating to the object of contracts . . . is void." SDCL 53-5-3 provides: "Where a contract has but a single object and such object is . . . wholly impossible of performance, . . . the entire contract is void."

[¶14.] "The object of a contract is the thing which it is agreed, on the part of the party receiving the consideration, to do or not to do." SDCL 53-5-1. The conduct of these parties reflects that the object of this contract was the sale of the property rather than a June 15 closing. Shortly before June 15, without repudiating the forthcoming sale, Sellers himself requested a postponement of the closing in order to conduct an auction on the premises. Thereafter, both parties worked together to facilitate the sale by getting the personal property ready for the June 27 auction. Further, on August 14, Sellers's attorney confirmed that Sellers was still going to complete the sale, and he suggested a new September 16 closing date. Thus, the evidence reflects that the object of this contract was to sell the property, not to close the transaction on June 15. Furthermore, the title problems were resolved by August 4. Therefore, the object of this contract was not wholly impossible of performance within the meaning SDCL 20-2-2 and SDCL 53-5-3.

[¶15.] Sellers, however, contends that because this contract was for the sale of land, the statute of frauds prevented the June 15 closing date from being extended without a written agreement. Sellers relies on *Vander Heide v. Boke*

*Ranch, Inc.*, 2007 S.D. 69, ¶ 25, 736 N.W.2d 824, 833 ("A contract subject to the statute of frauds cannot be modified by oral agreement."); SDCL 53-8-2 (providing that an "agreement for sale of real estate" is "not enforceable by action unless the contract or some memorandum thereof is in writing and subscribed by the party to be charged or his agent"); and SDCL 53-8-7 ("A contract in writing may be altered by a contract in writing without a new consideration or by an executed oral agreement, and not otherwise."). Johnson responds that the statute of frauds did not prevent Sellers from orally waiving the June 15 closing date. We agree with Johnson.

[¶16.] Although the statute of frauds prohibits oral alteration of a written contract for the sale of land, a waiver of the time for performance is not an alteration of a written contract. *Endres v. Warriner*, 307 N.W.2d 146, 149 (S.D. 1981) (involving an extension of the time for payment in a statute of frauds case). The statute of frauds does not preclude a waiver because a "waiver does not change or alter the terms of a contract. Rather, the contract remains with its original provisions but the right to enforce the payment at the time set forth in the contract is suspended until the time of extension has expired." *Id.* at 149-50. Therefore, a waiver does not have to be in writing. *Id.* at 150.

[¶17.] Sellers acknowledges *Endres* but argues that it was implicitly overruled by *Vander Heide*, 2007 S.D. 69, 736 N.W.2d 824. We disagree. *Vander Heide* involved an oral discussion altering the terms of an easement, not the oral waiver of the time for performance of a real estate contract. 2007 S.D. 69, ¶¶ 18-32, 736 N.W.2d at 832-35. Further, in restating the general rule that a "contract

subject to the statute of frauds cannot be modified by oral agreement," *id.* ¶ 25, we relied on *Rooney v. Dayton-Hudson Corp.*, 310 Minn. 256, 246 N.W.2d 170 (Minn. 1976). *Rooney* recognized that "a contract subject to the statute of frauds could not be modified orally," but it also recognized that an "oral stipulation for an extension of time of payment goes simply to the question of performance," not to a modification of the contract itself. 310 Minn. at 266, 246 N.W.2d at 175. "[T]he distinction must be kept in mind between the contract itself, which is within the purview of the statute [of frauds], and the subsequent performance, which is not." *Id.* Thus, our decision in *Vander Heide* supports rather than overrules *Endres*. These cases recognize that notwithstanding the statute of frauds, parties may orally waive conditions involving the performance of the contract. Because both the time for payment and the time for closing involve performance of the contract, both may be waived notwithstanding the statute of frauds. We conclude that there was no legal impediment to the circuit court's finding that Sellers orally waived the June 15 closing.

[¶18.]     A party who waives the time for performance must give notice of any withdrawal of the waiver and give the other party a reasonable time to complete the contract. *Endres*, 307 N.W.2d at 150. "If no time is specified for the performance of an act, a reasonable time is allowed." SDCL 53-10-2. Therefore, when a "vendor has waived his right to enforce a forfeiture of the contract[,] he must give such notice of his intention to declare a forfeiture as will give reasonable time and opportunity to the vendee to perform." *Spolek v. Hatch*, 21 S.D. 386, 389, 113 N.W.

75, 77 (1907). "[A] vendor cannot use his own indulgence as a trap in which to catch the vendee." *Id.*[5]

[¶19.] The circuit court found that "the contract date was continued at the request of Mr. Sellers and acquiesced to by Mr. Johnson." The record supports the court's finding. Sellers initially asked for the continuance of the closing date and Johnson agreed. Thereafter, Sellers gave no indication that his waiver of the June 15 closing was withdrawn until July 24, when he sent a letter attempting to rescind. But at that point, Johnson had a reasonable time to complete the contract. *See Endres*, 307 N.W.2d at 150. And, just eleven days later on August 4, title had been cleared and closing of the purchase agreement was possible. This was a reasonable time to resolve the title problems that had prevented the initial closing. Moreover, on August 14, Sellers's attorney confirmed that Sellers again agreed to sell the property, and he proposed a new September 16 closing date. Therefore, even if Sellers possessed a right of rescission, his August 14 letter waived that right. "A [party] may waive [the] right [of rescission] by delay or conduct inconsistent with that right." *Wolken v. Wade*, 406 N.W.2d 720, 725 (S.D. 1987).

[¶20.] We conclude the circuit court correctly determined that Sellers waived the right to insist on performance of the closing on June 15. Thereafter, the impediments to closing were resolved within a reasonable time. Because the

---

5. The purchase agreement contained a clause making time of the essence of the contract. A provision in a contract that time is of the essence is limited to the original contract, and when time for payment under the original contract is extended, the time is of the essence provision is waived. *Id.* at 388, 113 N.W. at 76. In applying this rule, we see no distinction between the time for payment and the time for closing.

contract was capable of performance within a reasonable time of the initial closing date, the circuit court could award specific performance.

[¶21.] Sellers, however, argues that specific performance was an inappropriate remedy. "Specific performance is an equitable remedy and this [C]ourt's standard of review addresses whether there has been an abuse of discretion by the circuit court after reviewing the facts and circumstances of each case." *Lamar Adver. of S.D., Inc. v. Heavy Constr., Inc.*, 2008 S.D. 10, ¶ 10, 745 N.W.2d 371, 375.

[¶22.] "The presumed remedy for the breach of an agreement to transfer real property is specific performance." *McCollam v. Cahill*, 2009 S.D. 34, ¶ 15, 766 N.W.2d 171, 176. Sellers's only argument on this issue is that specific performance was inappropriate because the contract was invalid or impossible to perform, contentions we have rejected. Because Sellers has identified no other fact or circumstance suggesting that specific performance was an inappropriate remedy, we conclude that the circuit court did not abuse its discretion in ordering that relief.

[¶23.] Affirmed.

[¶24.] GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.